## STATE v. J. VINCENT PALMER AND ANOTHER.[1]

May 8, 1942.

No. 33,258.

*Hoke, Cobb & Janes,* for appellants.

*R. S. Wiggin,* City Attorney, and *John F. Bonner* and *Leo P. McHale,* Assistant City Attorneys, for the State.

[1]Reported in 3 N. W. (2d) 666.

*Homer R. Kinney,* Village Attorney, filed a brief on behalf of the Village of Richfield.

*J. A. A. Burnquist,* Attorney General, and *George T. Simpson,* Special Counsel, for the State, and *Fletcher, Dorsey, Barker, Colman & Barber,* filed separate briefs *amici curiae.*

LORING, JUSTICE.

This is an appeal from a judgment convicting defendants of the violation of an ordinance of the city of Minneapolis called "Interurban and Suburban Motor Omnibuses Ordinance" passed October 25, 1918, forbidding the carrying of passengers for hire in a motor omnibus from any place within the city of Minneapolis to any place outside that city or *vice versa* over or upon any public street or highway in the city without first securing a license from the city council and paying the license fee.

The question presented is the validity of the ordinance. The defendants contend that the city had no right to require a license and that no license was needed for the operation of their bus. The defendants held a certificate of public convenience and necessity issued by the railroad and warehouse commission purporting to authorize them to conduct their common carrier operations from points in the village of Richfield to "the loop district of Minneapolis" on certain streets of that city, some of which carried trunk highways and some of which did not. It is the contention of the defendants that the certificate of the railroad and warehouse commission confers upon them the privilege of operating their bus over the route named notwithstanding the Minneapolis ordinance and the fact that they have no license thereunder.

L. 1925, c. 185, Mason St. 1927, §§ 5015-1 to 5015-19, subjected the supervision and regulation of transportation of persons and property for hire on the public highways of this state by motor vehicles as common carriers to the jurisdiction and control of the railroad and warehouse commission, but § 18 of that act, as amended in 1929, L. 1929, c. 154, provided:

"No provision in this act shall authorize the use by any transportation company of any public highway in any city of the first class, whether organized under Section 36, Article 4, of the Constitution of the State of Minnesota, or otherwise, in violation of any charter provision or ordinance of such city in effect January 1, 1925, unless and except as such charter provisions or ordinance may be repealed after said date; nor shall this act be construed as in any manner taking from or curtailing the right of any city or village to regulate and control the routing, parking, speed or the safety of operation of a motor vehicle operated by any transportation company under the terms of this act, or the general police power of any such city or village over its highways; nor shall this act be construed as abrogating any provision of the charter of any such city now organized and operating under said Section 36 or Article 4, requiring certain conditions to be complied with before such transportation company can use the highways of such city, and such rights and powers herein stated are hereby expressly reserved and granted to such city." (Mason St. 1940 Supp. § 5015-18.)

It is the contention of the city that this section reserves and grants to it authority to regulate by license the operation of motor omnibuses as provided for in the ordinance cited. It is the contention of the defendants that section 18 is unconstitutional and void because the title of the act is not broad enough to cover its provisions. It is the further contention of the defendants that L. 1923, c. 418, § 3(f), Mason St. 1927, § 2674(f), which provides:

"No borough, village or city shall impose any tax or license fee or bond of any kind for the operation of any motor vehicle operated upon trunk highways in this state on interurban or intervillage routes and engaged as a common carrier of passengers or freight for hire through any such borough, village or city," nullified the ordinance here in controversy.

It is conceded that even if the city council acted arbitrarily in denying a license to the defendants it is no defense to a prosecu-

tion for a violation of the ordinance. State v. Lindquist, 171 Minn. 334, 214 N. W. 260. The defendants contend that no license can be required of them because the city has no power to require it.

1. We find no difficulty with the contention that L. 1925, c. 185, § 18, as amended by L. 1929, c. 154, does not come within the purview of the title. Insofar as § 18 is an exception to or reservation from the general application of the act, it is germane to the title and comes within the rule announced in C. Thomas Stores Sales System, Inc. v. Spaeth, 209 Minn. 504, 297 N. W. 9. Certainly the title of this statute was not a cloak for legislating upon dissimilar matters, and a reservation exempting cities of the first class from certain features of the act and leaving them a certain amount of control free from the interference of the railroad and warehouse commission was manifestly appropriate in connection with the general subject announced in the title and might reasonably be looked for in such a measure. State v. Cassidy, 22 Minn. 312, 21 Am. R. 765.

2. Sp. L. 1881, c. 76, constituted the charter of Minneapolis until it adopted a home rule charter November 2, 1920. Section 1 of subchapter 8 of c. 76 provided:

"The city council shall have the care, supervision and control of all highways, streets, alleys, public squares and grounds within the limits of the city."

Section 5 of subchapter 4 provided that the city council should have power by ordinance to provide for the government and good order of the city "as it shall deem expedient."

Section 2, c. XX, of the home rule charter under which the city is now operating provided that the city and its boards and departments shall have all the powers which the city and its departments and boards had at the time of the adoption of the charter in addition to such further powers as might be conferred in the home rule charter.

Under this delegation of sovereignty, we have no difficulty in determining that the motorbus ordinance passed October 25, 1918,

was within the police power granted to the city. This court has so often passed upon similar delegations of sovereignty to cities and has so frequently upheld their powers of control over their public streets that an extended citation of authorities is wholly unnecessary. As this court held in Schultz v. City of Duluth, 163 Minn. 65, 68, 203 N. W. 449, 450:

"To do business upon public streets is not a matter of right like the right of ordinary travel. Nor is the right to carry on such a business to be placed upon the same basis as that of conducting a lawful occupation upon private property within a municipality. The use of public streets for private enterprise may be for the public good, but even so it is a privilege that may be granted, regulated or withheld. * * * a municipality having the care and control of its streets and the authority to look to their convenient and safe travel may regulate and even exclude the carrying on of a transportation business thereon for private gain, or grant the privilege to some and exclude others, since no one has a right as of course to carry on a private business upon the public streets."

See also City of St. Paul v. Twin City Motor Bus Co. 189 Minn. 612, 614, 250 N. W. 572, where L. 1925, c. 185, § 18, was under consideration. Granting or refusing a license was within its authority in exercising its judgment on public convenience and necessity.

3. Defendants contend that L. 1923, c. 418, § 3 (f), operated to annul and repeal the power of the city under which the ordinance of October 25, 1918, was passed. This contention ignores the language of the subdivision. Section 3 of c. 418 relates entirely to the rate of tax, and subd. (f) does not purport to take away from the city any part of its police power except the right to impose a fee for the issuance of a license. The city's power to control motor vehicles engaged in the carriage of passengers for hire remained as it was in every other respect. The question of the

license fee as distinguished from the power to require a license is not here involved.

The act of 1923 was a tax measure. True, it imposed a tax upon motor vehicles which was both a property tax and a privilege tax, but nevertheless it was a tax measure and not one purporting to restrain or restrict the police power of a city aside from prohibiting the imposition of a tax or fee, whereas L. 1925, c. 185, was an exercise of the police power in the supervision and regulation of the transportation of persons and property for hire by motor vehicles. Section 18 of the latter chapter specifically excepted the police powers of the city from the general grant of such powers to the railroad and warehouse commission.

Whether or not subd. (f) applies to buses operating routes terminating in a city as distinguished from those passing "through" is a question not necessary to decision here. And if the subdivision applies to traffic terminating in the city, the question whether § 18 restored the right to impose a license fee in connection with the grant of a license to such vehicles to be used in streets is not here involved.

L. 1923, c. 418, was cited to this court in City of St. Paul v. Twin City Motor Bus Co. 187 Minn. 212, 245 N. W. 33, but subdivision (f) does not seem to have been urged as a defense, although the franchise tax there involved was regarded as a license fee.

Chicago Motor Coach Co. v. City of Chicago, 337 Ill. 200, 169 N. E. 22, 66 A. L. R. 834, relied upon by defendants was decided under a state law which apparently did not delegate such broad powers of sovereignty to cities as does the Minnesota law. Even if it were otherwise, this court would not be inclined to revise its views heretofore expressed. Any change should come from the legislature.

We conclude that the challenge to the validity of the ordinance, insofar as the granting of a license is concerned, is ill-founded, and the judgment of the trial court should be affirmed.

Affirmed.