# STATE v. BRENDA EDWARDS.

177 N. W. (2d) 40.

May 1, 1970—No. 41742.

*Robins, Meshbesher, Singer & Spence, Ronald I. Meshbesher,* and *Morley Friedman,* for appellant.

*Douglas M. Head,* Attorney General, *Keith M. Stidd,* City Attorney, and *Austin D. Ditzler,* Assistant City Attorney, and *James E. Sutherland,* Senior Student, for respondent.

*Larry B. Leventhal* and *Lynn S. Castner,* for Minnesota Civil Liberties Union, amicus curiae.

MURPHY, JUSTICE.

This is an appeal from an order of the municipal court denying a motion by defendant, Brenda Edwards, for dismissal and from a judgment whereby she was convicted of violating Minn. St. 169.974, subd. 4(a). The motion to dismiss asserts that the statute "is unconstitutional since it is repugnant to the reserved powers clause of the Ninth Amendment and to the due process clause of the Fourteenth Amendment to the Constitution of the

United States and to Article I, Section II, the rights and privileges clause and Article I, Section XVI, the reserve powers clause of the Constitution of the State of Minnesota, and, as such, constitutes an illegal exercise of the police powers of the State of Minnesota." In this court defendant urges that the statute has no relation to public welfare and safety, does not promote the general welfare, invades fundamental rights of the individual, and denies to motorcyclists equal protection of the laws.

It appears from the record that defendant was arrested on the public streets of Minneapolis on May 1, 1968, the effective date of the so-called Minnesota Motorcycle Helmet Law, and charged with the operation of a motorcycle in violation of § 169.974, subd. 4(a):

"When operating a motorcycle on the streets and highways of this state, the operator and passenger, if any, shall wear protective headgear that complies with standards established by the commissioner."

The facts are undisputed. At the time of her arrest, Mrs. Edwards was not wearing a protective headgear as required by statute. She argues that the statute exceeds the police power of the state because it protects the motorcyclist from self-harm with no concomitant benefits to the public health, safety, or welfare. She contends that the statute not only interferes with her personal right in that it discriminates against her as a motorcyclist but also denies equal protection of the law. In support of this claim she points out that the statute does not apply equally to automobilists, bicyclists, and pedestrians.

The trial court determined that the statute is constitutional and in an interesting and well-written memorandum stated:

"The Court finds said statute is a valid exercise of the State's police power and is therefore constitutional.

"With few exceptions the defendant and other cyclists appearing before this Court do appear to agree that the use of a helmet does contribute to the safety of a rider. In the instant case the

defendant stated on direct examination that she almost always wears a helmet because '* * * if I fell, you know, it would protect my head, I hope—I think. That is what it is supposed to do.'

"A significant rise in motorcycle and motorscooter registrations and in the number of serious accidents and fatalities has caused legislation similar to Minnesota's to be enacted to date in some 30 states. The annual Minnesota motorcycle and motorscooter registration in 1966 was 49,775. Statistics compiled by the U. S. Department of Transportation show motorcycle registrations nationally rose from 754,080 in 1960 to 1,914,700 in 1966, with a projected annual increase by 1970 to 4,000,000.

\* \* \* \* \*

"To be a valid exercise of the State's police power, as this Court holds in the instant case, a statute must meet two separate criteria: (1) The area of action must be within the legitimate concern of the state and not reserved to the individual; and (2) the method of control must be reasonably related to the legitimate end envisioned.

"While an exact definition of the term 'police power' is nearly impossible, it has been said that 'the police power extends to protection of the public health, * * * safety, morals and general welfare; to the protection of the lives, limbs, health, comfort and quiet of all persons and the protection of all property within the State, including public property; to the promotion of the comfort and welfare of society; and, in addition, to the enhancement of the public convenience and the general prosperity.' (See 11 Am. Jur. 1015-1018, Constitutional Law, Section 270.)

"Our courts have long recognized that the scope of police power changes with changing circumstances and changing conditions, and that as conditions demand, for the public good, some restraints on individual freedoms must be expected. In Euclid v. Ambler Realty Co., 272 U. S. 365, 47 S. Ct. 114, 71 L. ed. 303, 54 A. L. R. 1016, 1024, the United States Supreme Court said:

" 'Until recent years, urban life was comparatively simple; but, with the great increase and concentration of population,

problems have developed and constantly are developing, which require, and will continue to require, additional restrictions and respect of the use and occupation of private lands and urban communities. Regulations, the wisdom, necessity, and validity of which as applied to existing conditions, are so apparent that they are now uniformly sustained, a century ago, or even a half-a-century ago, probably would have been rejected as arbitrary and oppressive * * * and in this there is no inconsistency, for, while the meaning of constitutional guarantees never varies, the scope of their application must expand or contract to meet the new and different conditions which are constantly coming within the field of their operation. In a changing world it is impossible that it should be otherwise.'

"Although not particularly a major consideration in this Court's decision, the fact that the legislation involves those using the highways is not completely irrelevant. The principle of state control of public highways and the necessity for regulation and on occasion prohibition, is touched on in State v. LeFebvre (1928), 174 Minn. 248, 219 N. W. 167, and State v. Palmer (1942), 212 Minn. 388, 3 N. W. 2d 666. The public highways, roads, and streets are public property, the property of all the people of the state. The legislature has plenary power over the regulation of such use for the safety and best interests of the public. See also Kelly v. Anderson (1952), 74 Ariz. 364, 249 P. 2d 833; Ragland v. Wallace (1946), 80 Ohio App. 210, 70 N. E. 2d 118. The U. S. Supreme Court recognized and gave sanction to the plenary power of the states over use of the public way in Hess v. Pawloski (1927), 274 U. S. 352, 47 S. Ct. 632, 71 L. ed. 1091:

" 'Motor vehicles are dangerous machines, and, even when skillfully and carefully operated, their use is attended by serious dangers to persons and property. In the public interest the state may make and enforce regulations reasonably calculated to promote care on the part of all, residents and non-residents alike, who use its highways.'

"The Court has considered the defendant's argument that

M. S. A. 169.974, Subd. 4(a), is class legislation. However, as is pointed out in Doyle v. Kahl (1951), 242 Iowa 153, 46 N. W. 2d 52, 55, 'Legislation which applies equally to all in a reasonably designated group is not discriminatory nor does it constitute class legislation.'

" 'Finally, we are committed to the principle that unless a law is unconstitutional beyond a reasonable doubt, it must be sustained. The burden of proof in this respect is on the party seeking to set the law aside.' Minneapolis Federation of Teachers, v. Obermeyer, 275 Minn. 347, 356, 147 N. W. 2d 358 (1966). The defendant, Brenda Edwards, has not sustained that burden.

"Essentially this Court's decision is based on the premise that it is the province of the legislature to declare what acts are inimical to the public welfare and to prohibit the same and provide the penalties therefore. State v. Anderson, *et al.*, Minn. Sup. Ct. No. 166-1/2, filed June 21, 1968; State v. Shevlin-Carpenter Co., 99 Minn. 158, 108 N. W. 935; State v. Moilen, 140 Minn. 112, 167 N. W. 345; 5A Dunnell Dig. (3rd Ed.), § 2407. It is not incumbent upon any court to interpose its own judgment in opposition to that of the legislature except in the cases of an obvious abuse of the legislative power. The Court finds no such abuse in the instant case.

"To the contrary, if an opinion were to be stated, it is the Court's conclusion that the helmet of a cyclist is as essential as that worn by the workmen in various hazardous occupations or by athletes or members of the armed forces."

We agree with the trial court that the question of whether or not the statute bears a real and substantial relation to the public health, safety, and welfare or whether it is unreasonable or arbitrary are questions which are committed in the first instance to the judgment and discretion of the legislative body, and unless the decisions of that body on those questions appear to be clearly erroneous, courts will not interfere. State v. Target Stores, Inc. 279 Minn. 447, 156 N. W. (2d) 908; State v. Kenny Boiler & Mfg. Co. 202 Minn. 605, 279 N. W. 407; 3B Dunnell,

Dig. (3 ed.) § 1605; 16 Am. Jur. (2d) Constitutional Law, §§ 281, 282.

A great many courts have considered the constitutionality of statutes requiring the wearing of helmets by motorcyclists and have almost uniformly held that such statutes are constitutional. In general, courts have been of the view that motorcycles, capable of operating at very high speed, are far more hazardous to their riders than automobiles or other kinds of vehicles. They are not only less stable but also have no protective frame or structure which might serve to lessen the hazards of injury. The real and potential dangers inherent in the use of motorcycles impose upon the public the consequent burden of providing services and facilities incident to such hazards. All of the objections raised in the briefs of defendant and amicus curiae have been fully discussed and resolved in decisions of other courts. Recent decisions by the Wisconsin Supreme Court, Bisenius v. Karns, 42 Wis. (2d) 42, 165 N. W. (2d) 377, and the Washington Supreme Court, State v. Laitinen, 77 Wash. (2d) 130, 459 P. (2d) 789, which uphold the constitutionality of such statutes, discuss at length the principles of law which support their validity. Other authorities include Commonwealth v. Arnold, 215 Pa. Super. 444, 258 A. (2d) 885; State v. Eitel (Fla.) 227 So. (2d) 489; State v. Fetterly (Ore.) 456 P. (2d) 996; State v. Solomon (Vt.) 260 A. (2d) 377; Arutanoff v. Metropolitan Government (Tenn.) 448 S. W. (2d) 408; Krafft v. New York (N. Y. County Court, Onondaga County, March 4, 1969), certiorari denied and appeal dismissed, 396 U. S. 24, 90 S. Ct. 198, 24 L. ed. (2d) 145; Ex parte Smith (Tex. Cr. App.) 441 S. W. (2d) 544; State ex rel. Colvin v. Lombardi, 104 R. I. 28, 241 A. (2d) 625; Commonwealth v. Howie, 354 Mass. 769, 238 N. E. (2d) 373, certiorari denied, 393 U. S. 999, 89 S. Ct. 485, 21 L. ed. (2d) 464; People v. Schmidt, 54 Misc. (2d) 702, 283 N. Y. S. (2d) 290, appeal dismissed, 23 N. Y. (2d) 686, 295 N. Y. S. (2d) 936, 243 N. E. (2d) 153; People v. Newhouse, 55 Misc. (2d) 1064, 287 N. Y. S. (2d) 713; People v. Carmichael,

56 Misc. (2d) 388, 288 N. Y. S. (2d) 931; State v. Anderson, 3 N. C. App. 124, 164 S. E. (2d) 48. See also, Comment, 71 W. Va. L. Rev. 191; Note, 1969 Wis. L. Rev. 320; Comment, 73 Dickinson L. Rev. 100. *Cf.*, American Motorcycle Assn. v. Department of State Police, 11 Mich. App. 351, 158 N. W. (2d) 72.

The policy of this court in connection with the legislature's authority to enact police measures has been well expressed by Mr. Justice Nelson in Beck v. Groe, 245 Minn. 28, 40, 70 N. W. (2d) 886, 895:

"The legislature is in the first instance the judge of what is necessary for the public welfare. The earnest conflict of serious opinion does not suffice to bring it within the range of judicial cognizance. Courts cannot pass on the soundness or expediency of theories embodied in statutes enacted in the exercise of the police power for the social benefit of the citizen and the public welfare. The control, regulation, and restrictions to be imposed, to attain, so far as may be, results consistent with the public welfare, are purely of legislative cognizance. The legislative determination of the control to be applied is final, except when so arbitrary as to be violative of the constitutional rights of the citizen. 3 Dunnell, Dig. (3 ed.) § 1605, and cases cited."

The assertion that the statute unfairly discriminates against motorcycle users and lacks proper classification may be disposed of by observing that public highways have long been recognized as an appropriate subject of the police power, and regulations may be established governing the use and users of highways. State v. LeFebvre, 174 Minn. 248, 219 N. W. 167; State v. Palmer, 212 Minn. 388, 3 N. W. (2d) 666; Minneapolis Gas Co. v. Zimmerman, 253 Minn. 164, 91 N. W. (2d) 642.

The legislature has plenary power over the regulation of the privilege to use the highways for the safety and best interests of the public. Hess v. Pawloski, 274 U. S. 352, 47 S. Ct. 632, 71 L. ed. 1091; Kelly v. Anderson, 74 Ariz. 364, 249 P. (2d) 833; Ragland v. Wallace, 80 Ohio App. 210, 70 N. E. (2d) 118.

Affirmed.