David L. PICOU, Plaintiff–Appellant,

v.

Jim GILLUM, Sheriff of Pasco County and James T. Russell, State Attorney, Defendants–Appellees.

No. 88–3442.

United States Court of Appeals, Eleventh Circuit.

June 13, 1989.

Gardner W. Beckett, Jr., St. Petersburg, Fla., for Picou.

James A. Peters, Office of the Atty. Gen., Tallahassee, Fla., for Russell.

Norman A. Palumbo, Jr., Leon Cannon, New Port Richey, Fla., for Gillum.

Before POWELL *, Associate Justice (Retired), United States Supreme Court, RONEY, Chief Judge, and HILL, Circuit Judge.

POWELL, Associate Justice:

The question presented is whether the federal Constitution prohibits Florida from requiring riders of motorcycles to wear protective headgear. We think Florida's statute a valid exercise of the State's police powers, and therefore affirm the district court.

I.

Appellant David L. Picou brought this suit against appellee Jim Gillum, Sheriff of Pasco County, Florida, and appellee James T. Russell, Florida State Attorney for Pasco County, seeking a declaratory judgment that Florida's mandatory motorcycle hel-

---

* Honorable Lewis F. Powell, Jr., Associate Justice of the United States Supreme Court, retired, sitting by designation.

met law, Fla.Stat. § 316.211, is unconstitutional. The Florida statute provides in relevant part:

(1) No person shall operate or ride upon a motorcycle unless he is properly wearing protective headgear securely fastened on his head which complies with standards established by the department.

(2) No person shall operate a motorcycle unless he is wearing an eye-protective device over his eyes of a type approved by the department.

Appellant's complaint alleged that he uses a motorcycle as his primary means of transportation, that he wishes to ride without a helmet, and that appellees have enforced the statute by arresting and prosecuting violators in Pasco County and will continue to do so.

Appellant contended that the statute violated federal constitutional rights to Due Process, Equal Protection, and privacy. The district court dismissed the complaint on the authority of *Simon v. Sargent,* 346 F.Supp. 277 (D.Mass.1972), *aff'd mem.,* 409 U.S. 1020, 93 S.Ct. 463, 34 L.Ed.2d 312 (1972). On appeal, a panel of this Court held that because the district court in *Simon* did not address a privacy claim, the Supreme Court's summary affirmance in that case was not dispositive. The case was therefore remanded to the district court for consideration of appellant's privacy argument. See *Picou v. Gillum,* 813 F.2d 1121 (11th Cir.1987). The district

court held that the Supreme Court's privacy opinions did not support appellant's contentions, and upheld the helmet statute.

## II.

This appeal presents us with the latest in a long line of challenges to the constitutionality of mandatory helmet laws. Helmet statutes have been the subject of numerous published opinions from state courts. Although a few courts in the late 1960's and early 1970's held motorcycle helmet laws unconstitutional,[1] each of these cases has been reversed or overruled. Courts in subsequent cases have uniformly upheld the provisions.[2] Indeed, various constitutional challenges to Florida's statute have been rejected both by Florida courts, see *Hamm v. State,* 387 So.2d 946 (Fla.1980); *Cesin v. State,* 288 So.2d 473 (Fla.1974); *State v. Eitel,* 227 So.2d 489 (1969), and by a three-judge federal district court, see *Bogue v. Faircloth,* 316 F.Supp. 486 (S.D.Fla.1970).

### A.

Appellant first relies on Supreme Court cases recognizing a right to privacy. The Due Process Clause of the Fourteenth Amendment embodies important protections against state intrusion on intimate and fundamental personal decisions. As in *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), and *Griswold v. Con-*

---

**1.** See *People v. Fries,* 42 Ill.2d 446, 250 N.E.2d 149 (1969), *overruled, People v. Kohrig,* 113 Ill.2d 384, 101 Ill.Dec. 650, 498 N.E.2d 1158 (1986) (per curiam), *appeal dismissed sub nom. Kohrig v. Illinois,* 479 U.S. 1073, 107 S.Ct. 1264, 94 L.Ed.2d 126 (1987); *American Motorcycle Association v. Davids,* 11 Mich.App. 351, 158 N.W.2d 72 (1968), *overruled, People v. Poucher,* 67 Mich.App. 133, 240 N.W.2d 298, *aff'd,* 398 Mich. 316, 247 N.W.2d 798 (1976); *Everhardt v. City of New Orleans,* 208 So.2d 423 (La.App. 1968), *rev'd,* 253 La. 285, 217 So.2d 400 (La. 1968), *appeal dismissed,* 395 U.S. 212, 89 S.Ct. 1775, 23 L.Ed.2d 214 (1969). These courts found that helmet laws were beyond the police power of the State because they were intended to safeguard only the cyclist, and did not benefit the public.

**2.** See *Bogue v. Faircloth,* 316 F.Supp. 486, 489 (1970) (collecting cases up to 1970). Later cases from state supreme courts rejecting constitu-

tional challenges to mandatory helmet laws include *State v. Eighth Judicial District,* 101 Nev. 658, 708 P.2d 1022 (1985); *State v. Quinam,* 367 A.2d 1032 (Me.1977); *State v. Merski,* 113 N.H. 323, 307 A.2d 825 (1973); *State v. Lombardi,* 110 R.I. 776, 298 A.2d 141 (1972); *City of Kenosha v. Dosemagen,* 54 Wis.2d 269, 195 N.W.2d 462 (1972); *State v. Acker,* 26 Utah 2d 104, 485 P.2d 1038 (1971); *Penney v. City of North Little Rock,* 248 Ark. 1158, 455 S.W.2d 132 (1970); *State v. Albertson,* 93 Idaho 640, 470 P.2d 300 (1970); *City of Wichita v. White,* 205 Kan. 408, 469 P.2d 287 (1970); *Commonwealth v. Coffman,* 453 S.W.2d 759 (Ky.1970); and *State v. Edwards,* 287 Minn. 83, 177 N.W.2d 40 (1970). An even greater number of state intermediate courts have reached the same conclusion. The cyclists in these cases presented numerous arguments, including Equal Protection and First Amendment claims, as well as the privacy argument presented by appellant here.

*necticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), the right extends to reproductive decisions that are by their nature highly private. Also protected are decisions concerning the structure of the family unit, see *Moore v. East Cleveland,* 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977) (opinion of Powell, J.), and parental freedom to control the education of their children, *Pierce v. Society of Sisters,* 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); *Meyer v. Nebraska,* 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923). But the rights involved in these cases do not resemble the right claimed here. There is little that could be termed private in the decision whether to wear safety equipment on the open road. Indeed, the Supreme Court has repeatedly declined to recognize a constitutional right that would cover appellant's case.[3]

### B.

Appellant concedes that his case is not covered by existing precedents defining the right to privacy. He contends, however, that those precedents stand for a broader proposition: that the Constitution protects the "right to be let alone." See *Bowers v. Hardwick,* 478 U.S. 186, 199, 106 S.Ct. 2841, 2848, 92 L.Ed.2d 140 (1986) (Blackmun, J., dissenting); *Olmstead v. United States,* 277 U.S. 438, 478, 48 S.Ct. 564, 572, 72 L.Ed. 944 (Brandeis, J., dissenting). He further casts his argument in terms of a right to be free from "paternalistic" legislation. In other words, appellant argues that the Constitution forbids enforcement of any statute aimed only at protecting a State's citizens from the consequences of their own foolish behavior and not at protecting others.

First, there is no broad legal or constitutional "right to be let alone" by government. In the complex society in which we live, the action and nonaction of citizens are subject to countless local, state, and federal laws and regulations. Bare invocation of a right to be let alone is an appealing rhetorical device, but it seldom advances legal inquiry, as the "right"—to the extent it exists—has no meaning outside its application to specific activities. The Constitution does protect citizens from government interference in many areas—speech, religion, the security of the home. But the unconstrained right asserted by appellant has no discernable bounds, and bears little resemblance to the important but limited privacy rights recognized by our highest Court. As the Court has stated, "the protection of a person's *general* right to privacy—his right to be let alone by other people—is like the protection of his property and his very life, left largely to the law of the individual States." *Katz v. United States,* 389 U.S. 347, 350–51, 88 S.Ct. 507, 510–11, 19 L.Ed.2d 576 (1967) (citations omitted).

Whatever merit may exist in appellant's further contention that paternalistic legislation is necessarily invalid, this argument is inapplicable to Fla.Stat. § 316.211. The helmet requirement does not implicate appellant alone. Motorcyclists normally ride on public streets and roads that are maintained and policed by public authorities. Traffic is often heavy, and on highways proceeds at high rates of speed. The required helmet and faceshield may prevent a rider from becoming disabled by flying objects on the road, which might cause him to lose control and involve other vehicles in a serious accident. See *Bogue,* 316 F.Supp. at 489.

**3.** In addition to the summary affirmance in *Sargent,* the Supreme Court has dismissed for want of a substantial federal question appeals from other state court decisions in other similar cases. *Bisenius v. Karns,* 42 Wis.2d 42, 165 N.W.2d 377, *appeal dismissed,* 395 U.S. 709, 89 S.Ct. 2033, 23 L.Ed.2d 655 (1969), involved a challenge to a motorcycle helmet law on the broad ground that it unconstitutionally infringed on personal liberty. *People v. Kohrig,* 113 Ill.2d 384, 101 Ill.Dec. 650, 498 N.E.2d 1158 (1986), *appeal dismissed sub nom. Kohrig v. Illinois,* 479 U.S. 1073, 107 S.Ct. 1264, 94 L.Ed.2d

126 (1987), was a challenge to a mandatory seatbelt law based on privacy and other grounds. *Richards v. Texas,* 743 S.W.2d 747 (Tex.App.1987), *review denied,* 757 S.W.2d 723 (Tex.App.1988) (en banc), *appeal dismissed,* —— U.S. ——, 109 S.Ct. 1105, 103 L.Ed.2d 170 (1989), was a helmet case in which the cyclist raised Equal Protection and personal liberty arguments. The Supreme Court's summary dispositions are of course entitled to full precedential respect. E.g., *Hicks v. Miranda,* 422 U.S. 332, 344, 95 S.Ct. 2281, 2289, 45 L.Ed.2d 223 (1975).

It is true that a primary aim of the helmet law is prevention of unnecessary injury to the cyclist himself. But the costs of this injury may be borne by the public. A motorcyclist without a helmet is more likely to suffer serious head injury than one wearing the prescribed headgear. State and local governments provide police and ambulance services, and the injured cyclist may be hospitalized at public expense. If permanently disabled, the cyclist could require public assistance for many years. As Professor Tribe has expressed it, "[in] a society unwilling to abandon bleeding bodies on the highway, the motorcyclist or driver who endangers himself plainly imposes costs on others." L. Tribe, *American Constitutional Law* § 15–12, at 1372 (2d ed. 1988). Leaving aside the deference traditionally accorded to state highway safety regulation, see, e.g., *Kassell v. Consolidated Freightways Corp.*, 450 U.S. 662, 675, 101 S.Ct. 1309, 1318, 67 L.Ed.2d 580 (1981), we think Florida's helmet requirement a rational exercise of its police powers.

### III.

There is a strong tradition in this country of respect for individual autonomy and mistrust of paternalistic legislation. Appellant, like many of his predecessors in helmet law cases, cites John Stuart Mill for the proposition that "the only purpose for which power can rightfully be exercised over any member of a civilised community, against his will, is to prevent harm to others. His own good, either physical or moral, is not a sufficient warrant." J. Mill, *On Liberty* (1859). In fact, Thomas Jefferson presaged Mill by three quarters of century, writing in 1787 that "the legitimate powers of government extend to such acts only as are injurious to others." *Notes on the State of Virginia* in *Jefferson, Writings* 285 (Library of America ed. 1984) But the impressive pedigree of this political ideal does not readily translate into a constitutional right.

Legislatures and not courts have the primary responsibility for balancing conflicting interests in safety and individual autonomy. Indeed, the evidence suggests that arguments asserting the importance of individual autonomy may prevail in the political process. In the mid–1970's, opponents of helmet requirements successfully lobbied for amendment of a federal law that allowed withholding of federal highway funds from States without helmet statutes. See Dardis & Lefkowitz, *Motorcycle Helmet Laws: A Case Study of Consumer Protection*, 21 J. Consumer Aff. 202 (1987). More recently, Massachusetts' mandatory seatbelt law was repealed by referendum after opponents attacked it as an infringement on personal liberties. See, e.g., *Mandatory Seat Belt Foes Boycott Hearing, The Boston Globe*, March, 9, 1989, at 16.

Subsequent studies suggest that repeal of these safety measures can have a substantial cost in lives and property. See, e.g., Dardis & Lefkowitz, *supra*; Prinzinger, *The Effect of the Repeal of Helmet Use Laws on Motorcycle Fatalities*, Atlantic Econ. J., July 1982, at 35. But it is no more our role to impose a helmet requirement on this ground than to invalidate Florida's helmet law on the grounds urged by appellant. Although a narrow range of privacy rights are shielded from the political process by the Constitution, the desirability of laws such as the Florida helmet requirement is a matter for citizens and their elected representatives to decide.

### IV.

We think the district court was correct to conclude that appellant "has shown no reason in history, in policy, or in logic why a constitutional right should extend to his decision to forego a motorcycle helmet." The judgment of the district court is therefore

AFFIRMED.