**ABATE OF GEORGIA, INC., and all others similarly situated, Plaintiffs,**

v.

**STATE OF GEORGIA and Georgia Department of Public Safety, Defendants.**

**CIV.A. No. 1:00CV1682TWT.**

United States District Court,
N.D. Georgia,
Atlanta Division.

April 4, 2001.

John A. Roberts, Roberts Law Firm, Atlanta, GA, for plaintiffs.

Beverly Patricia Downing, John C. Jones, Kathleen Mary Pacious, Thurbert E. Baker, Office of State Attorney General, Atlanta, GA, for defendants.

## ORDER

THRASH, District Judge.

This is an action challenging the constitutionality of Georgia's motorcycle helmet law. It is brought pursuant to 42 U.S.C. § 1983 and is before the Court on Defendants' Motion to Dismiss Plaintiffs' Amended Complaint [Doc. 21] and Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint [Doc.25]. For the reasons set forth below, the Motion to Dismiss the Amended Complaint is denied as moot, and the Motion to Dismiss the Second Amended Complaint is granted.

## I. BACKGROUND

Plaintiff ABATE of Georgia, Inc. ("ABATE") brings this suit on behalf of itself and all others similarly situated. ABATE is an acronym for American Bikers Active Toward Education. Its main purposes are to promote motorcycling and the rights of motorcyclists. The named Defendants in this case are Roy E. Barnes, in his official capacity as Governor of Georgia, Commissioner Robert E. Hightower of the Georgia Department of Public Safety in his official and individual capacities, the Georgia Board of Public Safety, and the following members of the Georgia Board of Public Safety in their official and individual capacities: Jim Wetherington, Rooney L. Bowen, III, Hubert L. Smith, Rebecca F. Denlinger, Daniel M. Bryant, Jacquelyn H. Barrett, Bruce Harris, Robert E. Keller, Lydia J. Sartain, W.H. "Dub" Harper, Wayne Abernathy, Donnie Haralson, Gregory T. Coursey and Jamil Saba. Plaintiffs also have named as Defendants "Unknown City, County, and State Law Enforcement Agents."

The Georgia General Assembly has enacted a statute that requires all persons to wear "protective headgear" while operating or riding a motorcycle. At the time this action was filed, the statute, O.C.G.A. § 40–6–315, provided:

(a) No person shall operate or ride upon a motorcycle unless he or she is wearing protective headgear which complies with standards established by the Board of Public Safety.

(b) No person shall operate or ride upon a motorcycle if the motorcycle is not equipped with a windshield unless he or she is wearing an eye-protective device of a type approved by the Board of Public Safety.

(c) This Code section shall not apply to persons riding within an enclosed cab or motorized cart. This Code section shall not apply to a person operating a three-wheeled motorcycle used only for agricultural purposes.

(d) The Board of Public Safety is authorized to approve or disapprove protective headgear and eye-protective devices required in this Code section and to issue and enforce regulations establishing standards and specifications for the approval thereof. The Board of Public Safety shall publish lists of all protective headgear and eye-protective devices by name and type which have been approved by it.

O.C.G.A. § 40–6–315 (Supp.1999). The statute was amended in the 2000 session of the Georgia General Assembly to substitute the newly created Commissioner of Motor Vehicle Safety as the applicable regulatory authority, in the place of the

Board of Public Safety, effective July 1, 2001. O.C.G.A. § 40–6–315 (Supp.2000).

Pursuant to the authority granted by the statute, the Board of Public Safety has promulgated rules and regulations that establish standards for headgear and eye-protective devices. *See* Ga. Comp. R. & Regs. r. 570–12–.01 to –.10 (2000) (regulating eye-protective devices); *id.* at r. 570–13–.01 to .10 (regulating motorcycle headgear). These regulations define technical standards that acceptable headgear and eye-protective devices must satisfy. The regulations also require that manufacturers affix a permanent label showing that the equipment complies with the applicable standard. *See id.* at r. 570–12–.10 (eye-protective device); *id.* at r. 570–13–.05 (headgear). Helmets are held to the standards set by the United States Department of Transportation. *See id.* at r. 570–13–.01(1) ("Future reference to standards as for specifications, statue [sic] or regulations will be the current version of the United States Department of Transportation, National Highway Traffic Safety, Federal Motor Vehicle Safety Standards; Motorcycle Helmets. This will permit automatic adjustment to future revisions or adjustments in the standards."). Compliance requirements for eye-protective devices is determined in accordance with those test methods described in Sections 6.3.4.1.1, 6.3.4.1.2 and 6.3.4.1.3 of the American Standards Institute Standard Z87.1–1968, September 18, 1968, "Eye and Face Protection" and explained in Section 10.1 of the National Bureau of Standards Circular 533, May 20, 1953, "Method for Determining the Resolving Power of Photographic Lenses." *Id.* at r. 570–12–.05(e). It is undisputed that the Board of Public Safety has not published lists of all protective headgear and eye-protective devices by name and type which have been approved by it.

Plaintiffs filed this action to challenge the constitutionality of O.C.G.A. § 40–6–315. First, Plaintiffs contend that the Board of Public Safety's failure to publish a list of approved headgear and eye protection devices violates Plaintiffs' rights under the First, Fifth and Fourteenth Amendments to the Constitution of the United States. Second, Plaintiffs contend that the requirements that motorcyclists wear headgear and eye-protective devices are unconstitutionally vague. Plaintiffs argue that the failure of the Board of Public Safety to publish lists of approved gear has prevented ABATE's members and others similarly situated from knowing what equipment satisfies the requirements of O.C.G.A. § 40–6–315. Consequently, Plaintiffs claim they have been issued citations for allegedly violating the statute resulting in points being placed on their driver's licenses, suspension of driving privileges, and other sanctions.

Plaintiffs filed suit in this court on July 5, 2000, against the State of Georgia and the Georgia Department of Public Safety. Plaintiffs also filed a Motion for a Temporary Restraining Order and/or in the Alternative a Preliminary Injunction [Doc. 3]. Plaintiffs filed an Amended Complaint on August 4, 2000 [Doc. 7]. The Amended Complaint removed the State of Georgia and Department of Public Safety as Defendants and named in their stead Governor Barnes, Commissioner Hightower, the Board of Public Safety, Public Safety Board member Jim Wetherington, and Unknown City, County, and State Law Enforcement Officers. The Court held a hearing on the temporary restraining order and preliminary injunction motion on August 7, 2000. At the conclusion of that hearing, the Court denied Plaintiffs' motion for a temporary restraining order. The Court also denied Defendants' Motion to Dismiss the original Complaint in light of Plaintiffs having three days before filed an Amended Complaint. Thereafter, on August 25, 2000, the Court entered a writ-

ten Order [Doc. 9] explaining its decision at the August 7 hearing. On September 20, 2000, Plaintiff filed a Second Amended Complaint [Doc. 10]. The Second Amended Complaint named as Defendants Governor Barnes, Commissioner Hightower, Mr. Wetherington, all additional members of the Board of Public Safety not previously named, the Board itself as an entity, and Unknown City, County, and State Law Enforcement Agents. Plaintiffs seek declaratory judgment, injunctive relief, compensatory damages, $10 million in punitive damages, and attorneys' fees and costs. Defendants have filed motions to dismiss both the Amended Complaint and Second Amended Complaint. In light of the Plaintiffs having filed a Second Amended Complaint, the Motion to Dismiss the Amended Complaint is moot. This Order consequently addresses only the Second Amended Complaint and Defendants' motion that it should be dismissed.

## II. MOTION TO DISMISS STANDARD

A complaint should be dismissed pursuant to Rule 12(b)(6) only where it appears beyond doubt that no set of facts could support the plaintiff's claims for relief. Fed.R.Civ.P. 12(b)(6); *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir.1992). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. *Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994–95 (11th Cir.1983). Notice pleading is all that is required for a valid com-

plaint. *Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir.1985). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *Id.*

## III. DISCUSSION

Many states have enacted statutes that require motorcyclists to wear protective headgear. *See generally*, Alan S. Wasserstrom, Annotation, *Validity of Traffic Regulation Requiring Motorists to Wear Helmets or Other Protective Gear*, 72 A.L.R.5th 607, 607 (1999). Motorcycle helmet laws generally require motorcyclists to wear helmets or other protective devices that have been approved by a state agency. *Id.* at 619–20. The statutes "reflect a widespread effort to combat the rising death and injury toll of accidents that involve motorcyclists." *Id.* at 620. Motorcyclists have mounted a variety of challenges to the constitutional validity of these statutes. *See, e.g., Picou v. Gillum*, 874 F.2d 1519, 1520 (11th Cir.1989) ("This appeal presents us with the latest in a long line of challenges to the constitutionality of mandatory helmet laws."). Plaintiffs in this case challenge the constitutionality of Georgia's statute, O.C.G.A. § 40–6–315. Defendants respond that the suit should be dismissed for failure to state a claim upon which relief can be granted.

Defendants contend that Plaintiffs' Second Amended Complaint should be dismissed for five reasons. First, Defendants contend that Plaintiffs have not adequately alleged any violation of their federal constitutional rights. Plaintiffs claim violations of unspecified First Amendment rights, their Fifth Amendment [1] right to

---

1. Although Plaintiffs identify their due process claim as being brought pursuant to the Fifth Amendment, any due process claim must be brought pursuant to the Fourteenth Amendment's Due Process Clause, not the

Fifth Amendment's Due Process Clause. The Supreme Court ruled in *Barron v. Mayor & City Council of Baltimore*, 32 U.S. (7 Pet.) 243, 250–51, 8 L.Ed. 672 (1833), that the first ten amendments to the Constitution—the Bill

due proc- *;* on grounds that they cannot determine what headgear is required pursuant to O.C.G.A. § 40-6-315, and their Fourteenth Amendment right to equal protection. Plaintiffs' argument underlying all these claims is that O.C.G.A. § 40-6-315 and the regulations promulgated pursuant to it are unconstitutionally vague:

> Thus, Defendant's advancement of Regulations 570-13-.01 through .10 utterly fails to meet the total statutory requirements as mandated by the Georgia Legislature clearly within the statute in question, as those regulations cannot be intelligently applied by the citizens of the State of Georgia so as to make an intelligent and knowledgeable determination of *what does or does not meet the statutory requirements* necessary *to be in compliance with the instant statute* in question.

(Plaintiff's Response & Opposition to Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint, at 13 (emphasis in original).) [Doc. 30]

Plaintiffs do not state explicitly whether they are making a facial challenge, an as-applied challenge, or both. Consequently, construing the Second Amended Complaint in the light most favorable to Plaintiffs, the Court will presume that they are making both. A facial challenge to a statute asserts that the statute is unconstitutional on its face. In other words, the challenge asserts that the statute is unconstitutional generally and without reference to any particular set of facts. *United States v. Salerno*, 481 U.S. 739, 745 n. 3,

107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). An as-applied challenge, in contrast, asserts that the statute is unconstitutional because of the manner in which it was applied in the particular case. *Id.*

■ A "facial challenge to a legislative act is, of course, the most difficult challenge to mount successfully, since the challenger generally must establish that no set of circumstances exists under which the challenged statute would be valid." *Id.* at 745, 107 S.Ct. 2095. The fact that an act "might conceivably operate unconstitutionally under some set of circumstances is insufficient to render it wholly invalid" since the Supreme Court does not recognize "an 'overbreadth' doctrine outside the limited context of the First Amendment." *Id.* In other words, where a law does not implicate First Amendment rights, it can be challenged for vagueness only "as applied," unless the enactment is "impermissibly vague in all its applications." *Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1493-94 (9th Cir.1996); *see also Ritter v. State*, 258 Ga. 551, 552, 372 S.E.2d 230 (1988) ("Ritter also complains that O.C.G.A. § 40-6-315 is unconstitutionally vague, in that it does not give the cyclist reasonable notice of the type of headgear that must be worn. However, we find that Ritter has no standing to make the foregoing vagueness challenge, because Ritter wore no helmet and thus engaged in conduct which the statute clearly proscribes.").

■ In this case, Plaintiffs have alleged a First Amendment violation, but they fail to specify the nature of the alleged violation.[2] Plaintiffs have cited no cases that

---

of Rights—do not apply to the states. Since the passage of the Fourteenth Amendment, however, the Supreme Court has over time held in various cases that the Fourteenth Amendment incorporates most of the protections in the Bill of Rights. Additionally, the Fourteenth Amendment includes its own Due Process Clause prohibiting deprivation of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV. *See generally*

John E. Nowak & Ronald D. Rotunda, *Constitutional Law* § 10.2 (5th ed.1995) (explaining incorporation doctrine).

2. The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press, or the right of the people peaceably to assemble, and to petition

operating or riding a motorcycle without a helmet is an exercise of their rights of free speech, freedom of religion or their right to peaceably assemble and petition the government for redress of grievances. The Court on its own research has found no such cases. Without any case support whatsoever, the Court refuses to broaden the First Amendment by concluding that it is implicated in the enforcement of motorcycle helmet laws. The Georgia statute regulates conduct rather than speech or the exercise of religion. There is no First Amendment right to ride a motorcycle wearing a baseball cap, a bandana, or bareheaded.

 Plaintiffs also allege a due process violation on grounds that a motorcyclist cannot determine whether he is meeting the headgear requirements of the statute. This facial due process challenge, however, must fail because the statute clearly proscribes some conduct, such as riding a motorcycle without any protective head-covering whatsoever. An as-applied challenge also must fail because as-applied challenges are fact-specific. They cannot be brought on behalf of a class; they must be brought on a case-by-case basis. *Schall v. Martin*, 467 U.S. 253, 268 n. 18, 104 S.Ct. 2403, 81 L.Ed.2d 207 (1984). A court "will not sift through the entire class to determine whether the statute was constitutionally applied in each case." *Id.* In this case, Plaintiffs have not provided any specific facts surrounding application of O.C.G.A. § 40–6–315 to a single member, much less all members of the class. Consequently, it would be impossible for the Court to engage in an as-applied analysis even if legal precedent allowed it to do so.

 Additionally, there is no substantive due process privacy right implicated in this case. The Eleventh Circuit has ex-

plained in another motorcycle helmet case that "[t]here is little that could be termed private in the decision whether to wear safety equipment on the open road." *Picou v. Gillum*, 874 F.2d 1519, 1521 (11th Cir.1989). There is no right to be let alone that is implicated in this case. *Id.* Accordingly, if Plaintiffs' Second Amended Complaint can be construed as including a substantive due process privacy challenge to O.C.G.A. § 40–6–315, that due process challenge must fail also. Finally, the Court notes that the applicable regulations merely require Plaintiffs to check to see if their headgear has affixed to it the applicable U.S. Department of Transportation certification. Such a requirement does not seem vague at all. As a matter of fact, it seems a simple way to tell if one's headgear meets the statutory requirements.

 Plaintiffs also allege a violation of their equal protection rights protected by the Fourteenth Amendment. Motorcycle riders, however, are not a protected class. Requiring a person who rides a motorcycle to wear a helmet serves a rational purpose. An occupant of an automobile who is wearing a seatbelt is likely to remain in the vehicle in an accident. In contrast, a motorcyclist involved in an accident is much more likely to end up on the pavement with the chance of a serious head injury. Failure to require motorcyclists to wear appropriate headgear may increase costs to the taxpaying public, and the Georgia General Assembly's desire to limit such costs constitutes a rational purpose for O.C.G.A. § 40–6–315. As Justice Powell, sitting by designation with the Eleventh Circuit explained in *Picou v. Gillum*, 874 F.2d 1519, 1522 (11th Cir.1989):

> A motorcyclist without a helmet is more likely to suffer serious injury than one wearing the prescribed headgear. State and local governments provide police

---

the Government for a redress of grievances." U.S. Const. amend. I.

and ambulance services, and the injured cyclist may be hospitalized at public expense. If permanently disabled, the cyclist could require public assistance for many years. As Professor Tribe has expressed it, "[in] a society unwilling to abandon bleeding bodies on the highway, the motorcyclist or driver who endangers himself plainly imposes costs on others."

*Id.* (citations omitted). Motorcycle helmet laws are a permissible means of attempting to reduce this cost. "Legislatures and not courts have the primary responsibility for balancing conflicting interests in safety and individual autonomy." *Id.* Accordingly, Plaintiffs equal protection argument is without merit.

■ Second, Defendants contend that Plaintiffs' claims for damages against the individual defendants in their individual capacity are barred by the doctrine of qualified immunity. Section 1983 provides a private cause of action for persons whose rights under the federal constitution have been violated under color of state law. 42 U.S.C. § 1983. The statute confers no substantive rights itself. Instead, it provides "a method of vindicating federal rights elsewhere conferred." *Graham v. Connor,* 490 U.S. 386, 393–94, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). To establish a Section 1983 violation, Plaintiffs must show (1) conduct committed by a person acting under color of state law (2) that deprived them of rights, privileges or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); *Duke v. Massey,* 87 F.3d 1226, 1231 (11th Cir.1996).

In response to these claims, the Defendants sued in their individual capacity raise the affirmative defense of qualified immunity. "Qualified immunity shields government officials executing discretionary responsibilities from civil damages 'in-

sofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Courson v. McMillian,* 939 F.2d 1479, 1486 (11th Cir.1991) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). Qualified immunity is a question of law to be decided by the court. The test for qualified immunity is one of "objective-reasonableness" in evaluating the conduct of the government official claiming its protection. "[A]ll but the plainly incompetent or those who knowingly violate the law" find protection in qualified immunity. *Id.* (citing *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)).

In *Rich v. Dollar,* 841 F.2d 1558, 1563–64 (11th Cir.1988), the Eleventh Circuit adopted a two-part analysis for assessing the qualified immunity defense. First, the defendant public official must prove that he acted within the scope of his discretionary authority when the challenged conduct occurred. *Id.* at 1563. If the defendant satisfies this part, the burden shifts to the plaintiff to show that the defendant public official's conduct violated clearly established law. *Id.* at 1564. "That qualified immunity protects government actors is the usual rule; only in exceptional cases will government actors have no shield against claims made against them in their individual capacities." *Lassiter v. Alabama A & M Univ.,* 28 F.3d 1146, 1149 (11th Cir.1994) (en banc) (citations and emphasis omitted); *Redd v. City of Enterprise,* 140 F.3d 1378, 1382 (11th Cir.1998).

There is no dispute in this case that the individual Defendants have acted within the scope of their discretionary authority. Plaintiffs themselves state as follows:

It is Plaintiffs' position, as absolutely supported by the plain language of Subsection (d) of O.C.G.A. § 40–6–315, that the individual defendants were given the

discretionary authority "... to approve or disapprove protective headgear and eye protection devices required in this Code section and enforce regulations establishing standards and specifications for the approval thereof" which was done so that the Defendants had the lawful authority to approve of protective headgear as being sold to motorcycle riders in the State of Georgia.

(Plaintiffs' Response and Opposition to Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint, at 26–27.) [Doc. 30]

Having established that the Defendants were acting within the scope of their discretionary authority as state actors, the burden shifts to Plaintiffs to demonstrate that Defendants violated clearly established constitutional law. *Sims v. Metropolitan Dade County*, 972 F.2d 1230, 1236 (11th Cir.1992). To overcome qualified immunity, Plaintiffs must show that: (1) Defendants violated a federal constitutional right; and (2) the right was clearly established at the time of the violation. *Santamorena v. Georgia Military College*, 147 F.3d 1337, 1342 (11th Cir.1998). In *Lassiter*, the Eleventh Circuit held that for a law to be clearly established in the qualified immunity context, "preexisting law must dictate, that is truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law *in the circumstances.*" *Id.* at 1150 (emphasis in original). "Public officials are not obligated to be creative or imaginative in drawing analogies from previously decided cases." *Adams v. St. Lucie County Sheriff's Dept.* 962 F.2d 1563, 1575 (11th Cir.1992). Finally, plaintiffs must do more than rely on

general rules or abstract rights when meeting their burden. *Lassiter*, 28 F.3d at 1150.

Plaintiffs in this case have not satisfied either of these requirements. As discussed above, Plaintiffs have not shown that Defendants violated a federal constitutional right. Plaintiff's First, Fifth and Fourteenth Amendment arguments are without merit. Additionally, Plaintiffs have not shown that, even if a constitutional violation existed, the right was clearly established at the time of the violation. There is no case law stating that there is a federal constitutional right to a list of approved motorcycle headgear. Accordingly, the individual Defendants sued for damages in their individual capacity are entitled to qualified immunity.

■■■ Third, Defendants contend that Plaintiffs' claims for damages against the Board of Public Safety and all individuals in their official capacity are barred by the Eleventh Amendment.[3] Absent a waiver by the state or a valid Congressional override, the Eleventh Amendment bars suits against a state or one of its agencies, departments, or officials when the state is the real party in interest or when monetary recovery would be paid from state funds. *Wisconsin Dept. of Corrections v. Schacht*, 524 U.S. 381, 389, 118 S.Ct. 2047, 141 L.Ed.2d 364 (1998); *Kentucky v. Graham*, 473 U.S. 159, 169, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100–01, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *Silver v. Baggiano*, 804 F.2d 1211, 1213–14 (11th Cir.1986). Despite its express language, the Supreme Court has construed the Eleventh Amendment jurisdictional bar to extend to federal suits against a

---

**3.** The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

non-consenting state "by her own citizens as well as citizens of another state." *Port Auth. Trans–Hudson Corp. v. Feeney,* 495 U.S. 299, 304, 110 S.Ct. 1868, 109 L.Ed.2d 264 (1990) (quoting *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984)). Eleventh Amendment immunity can only be overcome through a waiver by the state or a valid congressional override.[4] *Wisconsin Dept. of Corrections,* 524 U.S. at 389, 118 S.Ct. 2047. A waiver, however, must be unequivocal to be valid. "In the absence of an unequivocal waiver specifically applicable to federal-court jurisdiction, we decline to find that [the State] has waived its constitutional immunity." *Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 241, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985). In this case, Plaintiffs do not contend that the State of Georgia has waived its Eleventh Amendment immunity. Neither do Plaintiffs contend that Congress has validly overridden that immunity in this case. Their argument on the Eleventh Amendment issues addresses only whether injunctive relief may be sought against the State, its agencies, and officials acting in their official capacity. The Court has already concluded that there is no constitutional violation for which to grant injunctive relief. Plaintiffs ignore Defendants' argument that Eleventh Amendment immunity bars recovery of monetary damages against the State of Georgia, the Georgia Department of Public Safety, the Board of Public Safety, or the individual Defendants sued in their official capacity.

The Court concludes that damages may not be recovered from the State, its agencies, or its officials acting in their official capacity because the State of Georgia has not waived its Eleventh Amendment immunity and Congress has not validly overridden it.

Fourth, Plaintiffs' Second Amended Complaint can be construed as claiming that even if Defendants are not violating the Constitution of the United States, they nevertheless are violating Georgia law. Defendants, however, contend that any claim that they are violating Georgia law is barred by the Eleventh Amendment pursuant to the Supreme Court's decision in *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 104–06, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). In *Pennhurst,* the plaintiff attempted to enforce a state's mental health law in federal court. The Supreme Court held that the Eleventh Amendment bars federal courts from enforcing state law either prospectively or retroactively. In writing for the majority, Justice Powell emphasized that "it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment." *Id.* at 106, 104 S.Ct. 900. The court agrees that *Pennhurst* is directly applicable in this case and forbids this court from determining that Defendants

4. It is important to note that a state can create a limited waiver of its immunity by consenting to suit in its own state courts without waiving its Eleventh Amendment immunity from suit in federal courts. *See Port Authority Trans–Hudson Corp.,* 495 U.S. at 305, 110 S.Ct. 1868. Thus, a state may waive its common law sovereign immunity under state law, without waiving its Eleventh Amendment immunity under federal law.

These two concepts of immunity are distinct. "Each ultimately rests upon separate, albeit related, footing—common law sovereign immunity is determined by state law and Eleventh Amendment immunity is determined under federal standards." *In re Allied–Signal, Inc.,* 919 F.2d 277, 280 n. 4 (5th Cir.1990); *see also* 14 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3524 (2d ed.1984).

are violating Georgia law. Furthermore, the Georgia Court of Appeals in *Dowis v. State,* 243 Ga.App. 354, 355, 533 S.E.2d 434 (2000), has already determined that "[t]he statute does not require the Board to approve specific types of headgear." *Id.* Given this determination by the Georgia Court of Appeals on the meaning of state law, it would be a gross intrusion for this Court to undercut that decision.

Fifth, Defendants contend that the plain words of Georgia's statute do not require the Board of Public Safety to approve or disapprove of headgear protection and eye-protection devices or to publish lists of approved equipment. On this ground the court simply notes that the Georgia Court of Appeals has agreed with Defendants in holding that the Board of Public Safety is not required to approve specific types of headgear. *Id.* A Georgia appellate court has already spoken on this issue, and the court respects its determination on the meaning of § 40–6–315(d).

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss Plaintiffs' Amended Complaint [Doc. 21] is DENIED AS MOOT. Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint [Doc.25] is GRANTED.