WILLIAM A. FRAZEE, Plaintiff-Appellant, v. THE DEPARTMENT OF EMPLOYMENT SECURITY *et al.*, Defendants-Appellees (Kelly Services, Defendant).

Third District   No. 3—86—0842

Opinion filed August 13, 1987.—Rehearing denied September 22, 1987.

Daniel J. Smith, of Morton, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Diane M. Curry, Assistant Attorney General, of Chicago, of counsel), for appellees.

JUSTICE SCOTT delivered the opinion of the court:

This is an appeal from an order of the circuit court of Peoria County which affirmed a decision of the defendant Illinois Department of Employment Security which determined that the plaintiff, William A. Frazee, should be disqualified from receiving unemployment benefits due to his refusal to work.

The decision of the Board of Review of the Department of Employment Security capsulizes the facts which led to this appeal. The pertinent part of that decision is as follows:

"In this case, the evidence established that the claimant refused an offer of suitable work without good cause, as his personal desire, no matter how strong or sincere [sic] held, did not constitute good cause for his refusal of work. When a refusal of work is based on religious convictions, the refusal must be based upon some tenets or dogma accepted by the individual of some church, sect, or denomination, and such a refusal based solely on an individual's personal belief is personal and noncompelling and does not render the work unsuitable. It is not the purpose of the Act nor of the Board of Review to abridge or to deny the claimant's constitutional right to the free exercise of religion by imposing a disqualification from benefits. However, other than his own self-serving testimony, the claimant has presented no corroborative evidence to establish that working on a Sunday was unsuitable for him. The claimant's contention that, subsequent to his refusal, he learned that his schedule could have been adjusted, is pure hearsay and conjecture and is of no evidentiary weight."

We have been presented for determination in this appeal the question of whether the plaintiff's personal professed religious belief that he could not work on Sundays constituted good cause for his refusal of work.

In support of his contention that his refusal to work on Sunday because of his personal religious belief constituted good cause the plaintiff cites a numbers of cases. We direct our attention to three

United States Supreme Court cases, namely, *Thomas v. Review Board* (1981), 450 U.S. 707, 67 L. Ed. 2d 624, 101 S. Ct 1425, *Sherbert v. Verner* (1963), 374 U.S. 398, 10 L. Ed. 2d 965, 83 S. Ct. 1790, and *Hobbie v. Unemployment Compensation Appeals Com.* (1987), 480 U.S. ____, 94 L. Ed. 2d 190, 107 S. Ct. 1046.

An examination of the cases discloses that in *Thomas* the claimant was a Jehovah's Witness who quit his employment when he was assigned to a department which produced turrets for military tanks. The Supreme Court of Indiana found the claimant to be ineligible for unemployment compensation. This determination was overturned by the United States Supreme Court on the ground that the claimant's religious beliefs were entitled to first amendment protection. In *Thomas* the court made the following observation:

"Where the state conditions receipt of an important benefit upon conduct proscribed by a religious faith, or *where it denies such a benefit because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs, a burden upon religion exists.*" (Emphasis added.) *Thomas v. Review Board* (1981), 450 U.S. 707, 717-18, 67 L. Ed. 2d 624, 633-34, 101 S. Ct. 1425, 1431-32.

The *Sherbert* case involved a Seventh-Day Adventist who was discharged by her employer for her refusal to work on Saturday, the sabbath day of her faith. Her application for unemployment compensation benefits from the State of South Carolina was denied. The United States Supreme Court reversed the Supreme Court of South Carolina on the ground that denial of unemployment compensation benefits to a Seventh-Day Adventist restricted the free exercise by the claimant of her religious beliefs. The United States Supreme Court in reaching such a decision stated:

"Here not only is it apparent that appellant's declared ineligibility for benefits derives solely from the practice of her religion, but the pressure upon her to forgo that practice is unmistakable. The ruling forces her to choose between following the precepts of her religion and forfeiting benefits, on the one hand, and abandoning one of the precepts of her religion in order to accept work, on the other hand. Governmental imposition of such a choice puts the same kind of burden upon the free exercise of religion as would a fine imposed against appellant for her Saturday worship." *Sherbert v. Verner* (1963), 374 U.S. 398, 404, 10 L. Ed. 2d 965, 970-71, 83 S. Ct. 1790, 1794.

An examination of the United States Supreme Court opinion in

*Hobbie* disclosed that the claimant Hobbie, after 2½ years of employment at the jewelry store, informed her immediate supervisor that she was to be baptized into the Seventh-Day Adventist Church and that for religious reasons she would no longer be able to work on her sabbath, from sundown on Friday to sundown on Saturday. The claimant was ultimately discharged and denied unemployment compensation benefits by the State of Florida. The United States Supreme Court reversed the denial and in so doing relied upon its prior decisions in the cases of *Thomas* and *Sherbert.*

Our examination of the foregoing cases reveals that a common thread was running through each case, namely, that in each case the claimant was a member of an established religious sect or church; that each of the claimants in refusing to work at a particular place or time was exercising what was believed to be a tenet, belief or teaching of an established religious body.

In the instant case the plaintiff does not claim that his refusal to work on Sunday is based upon any tenet of a church or religious body. He takes the position that he is a Christian and as such he feels it wrong to work on Sunday.

The dividing line between the plaintiff in the instant case and the claimants in the cases of *Thomas, Sherbert* and *Hobbie* may be a thin and fragile line; however, it is a dividing line which we deem significant.

We do not question the sincerity of the plaintiff. Historically, the Christians gave Sunday to the world as a holy day in the 4th century (A.D. 321—decree of Roman Emperor Constantine). However, Sunday and the sabbath are not synonymous. For Christians Sunday is the first day of the week. Sabbath day for the Jewish people is Saturday, the last day of the week, and for the Moslems the sabbath is Friday. The idea that a day was to be set aside for worship, rest and relaxation from the daily rigors appears early in the history of man. "On the sixth day God completed all the work he had been doing, and on the seventh day he ceased from all his work. God blessed the seventh day and made it holy, because on that day he ceased from all the work he had set himself to do." *Genesis* 2:1-3.

In 1490 B.C. (circa) the people of Israel found a man gathering sticks in the wilderness on the Sabbath day. Those who found him brought him before Moses and Aaron and to all the congregation. He was ordered to be stoned to death and he was. *Numbers* 15:32-36.

Moses in receiving the Ten Commandments related them to the Israelites in Transjordan in the wilderness, the Fourth Commandment being, "Keep the sabbath day holy as the Lord your God commanded

you." *Deuteronomy* 5:12.

The biblical mandates regarding the sabbath day were referring to Saturday, the last day of the week; however, such practice and precedent was followed by the Christians, who adopted Sunday as their sabbath day.

From the beginning of the colonization of America, the Colonies and the States enacted laws regarding what could and what could not be done on Sunday. The process was slow but the day evolved from one not only devoted to religion but also to one of rest. Each of our 13 American Colonies had laws which regulated what should be done on Sunday. The first "blue laws" were probably enacted by the New Haven Colony in 1656. Nearly all the "blue laws" prohibited all work on Sunday except works of necessity and charity. American pioneers had little choice but to ignore the so-called "blue laws" which prohibited work on Sunday. It was necessary to work continuously in order to survive. As the pioneers crossed the mountains into the Western lands, the "blue laws" were ignored.

There are still "blue laws" on the books of many of our States prohibiting certain business, recreation, and other activity; however, our way of life has resulted in the same being ignored and unenforced.

What would Sunday be today if professional football, baseball, basketball and tennis were barred. Today Sunday is not only a day for religion, but for recreation and labor. Today the supermarkets are open, service stations dispense fuel, utilities continue to serve the people and factories continue to belch smoke and tangible products. Our own State has only one current Sunday closing law, being the law which bans automobile sales on Sunday, a regulation which for financial reasons has been supported by the majority of the automobile dealers. Efforts to repeal the law have been unsuccessful.

We delve into the history of the significance of Sunday as to the activities permitted in order to illustrate that from a day designated as a holy day it has evolved into a day of also permitting rest, recreation, business, industry and labor. Such a change is not surprising, but on the contrary is dictated by the American way of life. If all Americans were to abstain from working on Sunday, chaos would result.

The assertion by one that as a Christian he or she does not have to accept employment which entails Sunday working and that such refusal will not affect the right to receive unemployment compensation benefits is not supported by the law of our State. As heretofore stated, the injunction against Sunday labor must be found in a tenet or dogma of an established religious sect. The plaintiff in this case

does not profess to be a member of any such sect.

For the reasons set forth the judgment of the circuit court of Peoria County is affirmed.

Affirmed.

BARRY and WOMBACHER, JJ., concur.