STATE of Minnesota, Plaintiff,

v.

**Eli A. HERSHBERGER, et al., Defendants.**

No. C9–88–2623.

Supreme Court of Minnesota.

Aug. 18, 1989.

Robert R. Benson, Fillmore County Atty., Preston, and Matthew J. Opat, Asst. Fillmore County Atty., Chatfield, and Hubert H. Humphrey, III, Minn. Atty. Gen., St. Paul, for plaintiff.

Phillip G. Villaume, Phillip G. Villaume and Assoc., St. Paul, and Joseph L. Daly, Howard J. Vogel, Professors of Law, Hamline University School of Law, St. Paul, for defendants.

David L. Bishop, David L. Reinschmidt, Oppenheimer, Wolff & Donnelly, Minneapolis, volunteer attys., for amicus curiae, Minnesota Civ. Liberties Union; Robert Hicks, Minnesota Civ. Liberties Union, Minneapolis, amicus curiae, of counsel.

KELLEY, Justice.

A Minnesota statute (Minn.Stat. § 169.522) (1988) requires slow-moving vehicles to display a fluorescent orange-red triangular sign emblem when being operated on the state's public highways. Appellants, members of the Old Order Amish religion ("The Amish") moved in the district court for dismissal of traffic citations each had received for noncompliance with the statute's display requirement. They claimed that the statute, by subjecting them to criminal penalties for noncompliance with the display requirement, infringed upon their right to freely exercise their religious beliefs which is afforded to them by the First Amendment to the United States Constitution and Article I, Section 16 of the Minnesota Constitution. The trial court rejected their claim, but it did certify the constitutional questions to the court of appeals pursuant to Rule 28.03, Minnesota Rules of Criminal Procedure. Upon application from the court of appeals, we accepted accelerated review pursuant to Minn.R. Civ.App.P. 118. We conclude that Minn. Stat. § 169.522, as applied to these appellants, infringes upon rights guaranteed to them by the Free Exercise Clause of the First Amendment of the Federal Constitu-

tion. Because that conclusion disposes of this appeal, we do not address appellants' claim that the statute as applied violates the appellants' right to freedom of conscience guaranteed to them by Article I, Section 16 of the Minnesota Constitution, but rather reserve that issue for another day.[1] We vacate the trial court's order and dismiss the charges against these appellants.

Each of the 14 appellants resides in Fillmore County, and each is a member of the Old Order Amish religion. A principal tenet of that religion is that its adherents remain separate and apart from the modern world. This concept of separation emanates from Christian Biblical directions to "be not conformed to this world," see Romans 12:2; and "Be ye not unequally yoked together with unbelievers," see II Corinthians 6:14, and is embodied in the basic document of the sect—the Articles of Confession. Based on that concept of separation, the Amish travel primarily by horse and buggy. In Fillmore County the buggy style typically used may be described as a four-sided black box, on wheels, drawn by a horse. Some members of the Amish community, although generally subscribing to the sect's concept of separation, are apparently willing to accommodate that concept with the requirement of Minn.Stat. § 169.522. These appellants, however, are unwilling to compromise their belief that the "loud" colors required and the "worldly symbols" the triangular shape represents to them conflict with the admonitions found in Apostle Paul's Epistles. To them to do so would be putting their faith in "worldly symbols" rather than in God. Between February and September 1988, each appellant received a traffic citation for operating a slow-moving vehicle (SMV), one of the black buggies, on the public highway in Fillmore County without displaying the SMV reflectorized triangle emblem man-

1. The issues raised by the constitutional questions certified relate to whether the statute, as applied, infringes upon the rights afforded appellants under the Free Exercise Clause of the First Amendment to the United States Constitution or Article I, Section 16 of the Minnesota Constitution. Amicus Minnesota Civil Liberties Union filed a brief in which it did not directly

address the issues raised by the certified questions, but rather focused upon arguments under the Establishment Clause. Ordinarily, when questions have been certified, briefs of amici should address issues raised by the questions. Since appellants do not raise an Establishment Clause argument, we do not address it in this opinion.

dated, or the alternate black triangular emblem permitted, by Minn.Stat. § 169.522 (1988).

Subdivision 1(a) of the statute requires that when operated on a public highway, a slow-moving vehicle must display an orange-red fluorescent triangular emblem. Under limited circumstances, subdivision 1(b) of the statute authorizes the Commissioner of Transportation to issue permits to display, instead, a dull black triangle with a white reflective border plus 72 square inches of permanent red reflective tape. Even though an operator possesses a permit, he or she must also carry a "regular" orange-red emblem in the vehicle which must be displayed externally during times of darkness or low visibility.[2] Pursuant to the statute, the Commissioner promulgated Minn.Rule 7440.0350.[3] The rule generally limits issuance of permits to those whose religious beliefs preclude them from compliance with the "regular" display requirements of the statute.

We address the Free Exercise Clause claim by observing that the United States Supreme Court has considered three factors to predominate in an evaluation of a Free Exercise Clause claim: (1) Is the objector's claim based on a sincerely held religious belief? (2) Does the government regulation burden the exercise of that religious belief? and, (3) Is the burden justified by a compelling state interest, which cannot be served by a less intrusive alternative? *See, e.g., Thomas v. Review Bd. of Indiana Employment Sec.,* 450 U.S. 707, 713–19, 101 S.Ct. 1425, 1429–33, 67 L.Ed.2d 624 (1981). In the instant case, the trial court's analysis of appellants' Free Exercise Clause claim commenced with, and appears to be based upon, its conclusion that these specific Amish appellants did not have a sincerely held religious belief because "the matter of religious belief reflects the individual choice of the personal Amish and not a sincere belief held by the

---

**2.** Relevant provisions of the statute are:

Subdivision 1. (a) All animal-drawn vehicles, * * * implements of husbandry and other machinery, * * * which are designed for operation at a speed of 25 miles per hour or less shall display a triangular slow-moving vehicle emblem * * *. The emblem shall consist of a fluorescent yellow-orange triangle with a dark red reflective border and be mounted so as to be visible from a distance of not less than 600 feet to the rear. * * * After January 1, 1975, all slow-moving vehicle emblems sold in this state shall be so designed that when properly mounted they are visible from a distance of not less than 600 feet to the rear when directly in front of lawful lower beam of head lamps on a motor vehicle. * * *.

(b) An alternate slow-moving vehicle emblem consisting of a dull black triangle with a white reflective border may be used after obtaining a permit from the commissioner under rules of the commissioner. A person with a permit to use an alternate slow-moving vehicle emblem must:

(1) carry in the vehicle a regular slow-moving vehicle emblem and display the emblem when operating a vehicle between sunset and sunrise, and at any other time when visibility is impaired by weather, smoke, fog, or other conditions; and

(2) permanently affix to the rear of the slow-moving vehicle at least 72 square inches of reflective tape that reflects the color red.

Minn.Stat. § 169.522, subd. 1 (1988).

**3.** Minn.Rule 7440.0350 provides:

Subpart 1. **Conflicting beliefs.** Persons who have sincerely held religious beliefs prohibiting their use of the standard SMV emblem may apply for a permit to display the alternate SMV emblem.

Subp. 2. **Application.** Applications for permits to display the alternate SMV emblem must be made on an application form prescribed by the commissioner. The application must contain a statement of the conflicting religious principles or tenets on which the applicant's objection to the display of the standard SMV emblem is based.

Subp. 3. **Permit use requirements.** The alternate SMV emblem may be used only on animal-drawn vehicles. A person operating a vehicle displaying the alternate SMV emblem must have in possession in the vehicle a permit or copy of a permit to display the alternate SMV emblem. A permit is not transferable and may not be used by persons other than employees or immediate household members of the family of a person who has obtained a permit. The permit must be displayed to a peace officer upon request.

Subp. 4. **Permit life.** A permit for the display of the alternate SMV emblem is valid for a period of four years.

Subp. 5. **Appeal.** The decision granting or denying permit requests must be in writing and must set forth the reasons for the action. A person whose application is denied may request a contested case hearing to review the denial, by writing to the commissioner of public safety.

community as a whole." These appellants argue that the trial court improperly constricted "the sincerely held belief" requirement by adding thereto that to be "sincere" the belief must be shared by the religious community as a whole. The state, of course, urges that we affirm the trial court's construction.[4]

■ Our research has revealed no relevant case of the United States Supreme Court in which it has ever required one who asserts a violation of rights under the Free Exercise Clause of the First Amendment, as applied to the states through the Fourteenth Amendment, to demonstrate that the sincerity of his or her belief comports with a religious tenet or principle uniformly and sincerely held by a religious community of which he or she is a member. Indeed, its holdings relating to the specific issue, so far as we have been able to ascertain, have uniformly rejected similar contentions when advanced in cases involving Free Exercise Clause rights. For example, in *Thomas,* 450 U.S. at 714, 101 S.Ct. at 1430, the Supreme Court specified that "religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection." Rather, the Court explained, the focus is on whether the one claiming the right individually has a sincere religious belief.

> We see, therefore, that Thomas drew a line, and it is not for us to say that the line he drew was an unreasonable one. Courts should not undertake to dissect religious beliefs * * *.
>
> \*    \*    \*    \*    \*    \*
>
> Intrafaith differences of that kind are not uncommon among followers of a particular creed, and the judicial process is singularly ill equipped to resolve such differences in relation to the Religion Clauses. One can, of course, imagine an asserted claim so bizarre, so clearly

nonreligious in motivation, as not to be entitled to protection under the Free Exercise Clause; but that is not the case here, and *the guarantee of free exercise is not limited to beliefs which are shared by all of the members of a religious sect.* Particularly in this sensitive area, it is not within the judicial function and judicial competence to inquire whether the petitioner or his fellow worker more correctly perceived the commands of their common faith. Courts are not arbiters of scriptural interpretation.

*Id.* at 715–16, 101 S.Ct. at 1430–31. (Emphasis supplied). *See also Sherbert v. Verner,* 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963); *Hobbie v. Unemployment Appeals Comm'n of Florida,* 480 U.S. 136, 107 S.Ct. 1046, 94 L.Ed.2d 190 (1986) (both cases were denial of unemployment compensation by states where the challenger refused Saturday work because of religious beliefs). More recently, in *Frazee v. Illinois Dep't of Employment Sec.,* ––– U.S. –––, 109 S.Ct. 1514, 103 L.Ed.2d 914 (1989), the Supreme Court expressly rejected identical assertions to those articulated here by the trial court and urged upon us by the state. In *Frazee,* the Illinois Board of Review, the Circuit Court of the 10th Judicial Circuit of Illinois, and the Appellate Court of Illinois, Third District, had all denied Frazee unemployment benefits because his claim rested on his "personal professed belief." Specifically the Illinois Appellate Court said "the injunction against Sunday labor must be found in a tenet or dogma of an established religious sect." *Frazee v. Dep't of Employment Sec.,* 159 Ill.App.3d 474, 111 Ill.Dec. 400, 403, 478, 512 N.E.2d 789, 792 (1987). In rejecting such reasoning, the United States Supreme Court said "Never did we suggest that unless a claimant belongs to a sect that forbids what his job requires, his belief, however sincere, must be deemed a

---

**4.** The state relies on evidence that the practice of individual members of the Amish community may differ with respect to their attitude toward, and the actual display of, SMV signs on their vehicles. Indeed, the record contains evidence that not all adherents of the Amish community regard the display of the orange-red reflectorized triangular emblem as a violation of the precepts of the Amish religion. However, as later explained, what is relevant to the inquiry is the sincerity of the belief of the individual raising the Free Exercise Clause challenge, not the general acceptance of the belief by all in the religious community.

purely personal preference rather than a religious belief."[5] *Frazee*, —— U.S. at ——, 109 S.Ct. at 1517. In the instant case, though the trial court did not make a specific finding, it did implicitly determine that application of the statute infringed upon the personal sincere religious beliefs of appellants although not all in the Fillmore County Amish community adhered to those same beliefs. The fact that at least one of the appellants has already actually suffered jail incarceration, and that the others have persistently expressed a willingness to do so rather than comply with the statute, must assuredly buttress that implicit finding that the appellants individually possessed a personal sincerity of belief. *Sherbert*, *Thomas*, *Hobbie*, and *Frazee* were all cases where an individual challenger claimed denial of unemployment compensation for refusal to engage in employment which allegedly infringed upon his or her rights under the Free Exercise Clause. In none of those cases did the United States Supreme Court require that the claimant's belief be shared by the community as a whole. We perceive no reason why an analysis which is valid for unemployment compensation purposes should be less valid when employed to ascertain the existence of a sincere religious belief in the context of criminal proceedings. Therefore, we hold that these appellants have met the initial test enunciated in *Thomas* by establishing that their sincerely held religious beliefs protected them from displaying the reflectorized emblem or the alternates required by the statute.

■ We turn next to consider whether, under the second factor of the *Thomas* test, application of the statute burdens the exercise of the appellants' religious beliefs. Without question, it does. In both *Thomas* and *Hobbie* the United States Supreme

Court held that because each claimant had been "forced to choose between fidelity to religious belief and * * * employment; the forfeiture of unemployment benefits for choosing the former over the latter brings unlawful coercion to bear on the employee's choice." *Hobbie*, 480 U.S. at 144, 107 S.Ct. at 1051. Surely, if the infringement of rights under the Free Exercise Clause is substantiated when the consequence involves merely temporary deprivation of unemployment compensation, the potentiality, if not the certainty, of criminal sanctions including fines or jail time equally and substantially infringes upon the rights these appellants enjoy in the free exercise of their religious beliefs under the First Amendment. *See, e.g., Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972). Even in *Bowen v. Roy*, 476 U.S. 693, 106 S.Ct. 2147, 90 L.Ed.2d 735 (1986), wherein the United States Supreme Court denied a claimant's challenge because it found the burden caused by the requirement of the use of a social security number with respect to qualification for AFDC benefits to be indirect and incidental, the court said "we cannot ignore the reality that denial of such benefits by a uniformly applicable statute neutral on its face is of a wholly different, less intrusive nature than affirmative compulsion or prohibition, by threat of penal sanctions, for conduct that has religious implications." *Id.* at 704, 106 S.Ct. at 2154. Here, the burden on these Amish appellants is substantial. They face a choice of either adhering to their religious beliefs by refusing to adopt "worldly symbols" bearing "loud colors" and suffering the consequent criminal sanctions therefor, or rejecting those beliefs in order to comply with the SMV statute.

Even though a challenger who asserts a Free Exercise claim has succeeded in estab-

---

**5.** In *Quaring v. Peterson*, 728 F.2d 1121, 1124–25 (8th Cir.1984), *aff'd by an equally divided Court sub nom. Jensen v. Quaring*, 472 U.S. 478, 105 S.Ct. 3492, 86 L.Ed.2d 383 (1985), the one claiming a Nebraska statute which required a driver's photograph on a state issued driver's license unconstitutionally infringed on her rights guaranteed by the Free Exercise Clause was found to have possessed a sincere religious belief notwithstanding that other members of her church

did not adopt her interpretation of the Christian Bible. *See also* L. Tribe, *American Constitutional Law*, § 14–12 at 1245–46 (2d ed. 1988). "The perception of the claimant's sincerity inevitably reflects the factfinder's view of the reasonableness of the claimant's beliefs. * * * [T]he very rights ostensibly protected by the free exercise clause might well be jeopardized by any but the most minimal inquiry into sincerity."

lishing the existence of a sincerely held belief and that the state's action has substantially burdened the Free Exercise Clause right, the third requirement of a *Thomas* analysis involves an inquiry into whether the burden is justified by a compelling state interest which cannot be served by a less intrusive alternative. For example, in *Sherbert v. Verner* the Court required the state to demonstrate a compelling interest, and "that no alternative forms of regulation would [serve the state's interest] without infringing on First Amendment rights." *Sherbert*, 374 U.S. at 406–07, 83 S.Ct. at 1796. The Supreme Court of the United States has adhered to the compelling interest—least restrictive alternative test likewise in later cases. *See Yoder*, 406 U.S. at 215, 92 S.Ct. at 1533 (only those interests of a "highest order" can infringe on religious beliefs); *Hobbie*, 480 U.S. at 140–41, 107 S.Ct. at 1049 (compelling state interest).[6]

The trial court found that the "safety and welfare of all persons using our public highways outweighs and overrides the objection to using the SMV sign * * *." The appellants argue that such a finding lacks any evidentiary support, because, in fact, the state presented no evidence to support the public safety issue claimed.

The state interest claimed here, of course, involves public safety to all who travel on the state's highways. Admittedly, the state presented no evidence of accident incidence involving vehicles displaying the SMV emblem as contrasted with that of those not displaying it. The evidence on the issue consisted, in essence, of acknowledgment by "experts" in the course of testimony that the statutory SMV emblem is almost universally recognized nationwide as designating a slow-moving vehicle, plus some nonspecific anecdotal claims of resi-dents of Fillmore County of dangers associated with encounters involving Amish vehicles on the highway.

■ Although we have reservations as to whether the evidence actually presented by the state in the trial court was quantitatively or qualitatively sufficient to establish a compelling state interest, highway safety, for the purpose of addressing appellants' challenge to the statute in this case we judicially notice that the state's concern for safety of the public using the highways, including these appellants, is a legitimate compelling state interest.

■ Thus, the question of the existence of a less restrictive alternative remains. The state argues that Rule 7440.0350 provides a less restrictive alternative. We agree with the appellants that it does not. At best, the rule only partially eases the statutory burden on the Free Exercise rights of the appellants. While the rule does authorize the issuance of permits to operators allowing the use of an alternate emblem plus 72 square inches of permanently affixed red tape, an operator of a SMV is not in compliance with the statute unless, additionally, during daylight hours, the vehicle contains a "regular" emblem, nor at night or in foul weather, unless that "regular" emblem is externally displayed on the vehicle in addition to the red reflectorized tape. Moreover, even the alternative provided by Minn.Stat. § 169.522, subd. 1(b), when authorized by a permit issued pursuant to Minn.Rule 7440.0350, is burdensome to the religious beliefs of these appellants who shun "worldly ways." The alternate requirement that a black triangular sign be displayed during daylight hours and, as well, that permanently affixed red reflective tape be employed is no less anathema to the appellants and con-

---

6. Some suggestion has been advanced that the United States Supreme Court has recently diminished the state burden by broadly defining the state's interests and by lowering the accommodation requirement by its decisions in *Goldman v. Weinberger*, 475 U.S. 503, 106 S.Ct. 1310, 89 L.Ed.2d 478 (1986) and *United States v. Lee*, 455 U.S. 252, 102 S.Ct. 1051, 71 L.Ed.2d 127 (1982). *See* L. Tribe, *supra*, § 14–13 at 1261. Professor Tribe suggests, however, that the low-ered burden for the state is reserved for situations where government actions burden religious choices only incidentally, whereas the stricter and higher standards are reserved for and applicable to situations where government action compels the individual to choose between religious beliefs and government benefits or avoidance of criminal sanctions. *See* L. Tribe, *supra*, § 14–13 at 1262–63.

sidered by them to be a burden on their personal religious beliefs than the "regular" statutory requirement of display of the emblem as provided in section 169.522, subdivision 1(a). Additionally, as appellants point out, the alternate SMV emblem fails to provide more warning of the presence of a SMV on the highway to motor vehicular traffic than does the black square horse-drawn buggy itself, which, as a matter of common sense, serves as a warning that the vehicle is moving at less than prevalent highway speeds for motorized vehicles. Furthermore, appellants note, state and county authorities have posted highway traffic signs depicting a black horse and buggy configuration in areas where Amish horse-drawn buggies are commonly encountered. The record contains no evidence which supports any conclusion that the display of the statutory alternate emblem during daylight hours provides an alternative less restrictive and less burdensome on appellants' First Amendment Free Exercise Clause rights.

■ Furthermore, at night, and during foul weather, the display requirements of the statute are more onerous to those who, like these appellants, harbor the personal belief that their religion forbids compliance, than upon those who do not share such beliefs. At night, in addition to being required to display the "regular" emblem they must likewise display 72 square inches of red reflectorized tape. The appellants here assert that since they do not object on religious grounds to outlining the boxes of their buggies with silver reflective tape—a color they consider acceptable because not "loud"—or to displaying red lit lanterns as a supplement to the silver reflective tape, that there does exist a less restrictive alternative to serve the state's public safety concerns. They further point out that testimony at the hearing established that the silver reflectorized tape was at least as bright, if not brighter than that outlining either triangular emblem mandated by the statute. The state contends its public safety concern is enhanced by the general recognition by the public of the orange-red triangular emblem as designating a SMV. The appellants counter by noting that the state itself has created an exception to that alleged desired uniformity, when, by section 169.522, subdivision 1(b), it has permitted in certain circumstances an alternative display (the black triangle-red reflectorized tape), which, though personally equally objectionable to appellants on religious grounds, is of questionable superiority on public safety grounds to the alternative suggested by appellants.

We conclude that the state's public safety interest would not be significantly diminished were it to permit the use at night of silver reflective tape used in connection with the display of lighted red lanterns by these appellants, and by those entertaining religious beliefs similar to those of these appellants, and that, therefore, it has failed to establish that a less restrictive alternative would not serve its public safety concerns.

■ Accordingly, we hold that these appellants have established that each has a sincerely-held religious belief that forbids him from displaying the SMV emblems required by Minn.Stat. § 169.522; that state enforcement of Minn.Stat. § 169.522 which subjects these appellants to criminal prosecution, with resultant potential fines or jail incarceration, burdens the appellants' rights under the Free Exercise Clause; that the state has a compelling public safety interest which Minn.Stat. § 169.522 seeks to serve; but that the state's compelling public safety interest can be served by a less restrictive alternative; and that, therefore, Minn.Stat. § 169.522 as applied against these appellants violates the Free Exercise Clause of the First Amendment to the United States Constitution. Therefore, we answer the first certified question in the affirmative.

Having so concluded, it is unnecessary for us to consider the second question certified by the trial court which asks whether Minn.Stat. § 169.522 as applied to these defendants violates Article I, Section 16 of the Minnesota Constitution. Therefore, we do not address that issue, and express no opinion on the issue posed, reserving its

consideration to a later date in a different case.

The decision of the trial court denying the motion of these appellants to dismiss all pending charges is vacated, and those charges are hereby dismissed.