STATE of Minnesota, Respondent,

v.

Eli A. HERSHBERGER, et al., Appellants.

No. C9–88–2623.

Supreme Court of Minnesota.

Nov. 9, 1990.

Philip G. Villaume, Philip G. Villaume & Associates, St. Paul, and Joseph L. Daly, Howard J. Vogel, St. Paul, for appellants.

Robert R. Benson, Fillmore County Atty., Preston, and Matthew J. Opat, Asst. Fillmore County Atty., Chatfield, for respondent.

David L. Bishop, Oppenheimer, Wolff & Donnelly, and Judith Cook, Minneapolis, for amicus.

POPOVICH, Chief Justice.

The facts of this case are reported in *Minnesota v. Hershberger*, 444 N.W.2d 282 (Minn.1989) (*Hershberger I*). On appeal of that decision to the United States Supreme Court, certiorari was granted, the judgment was vacated, and the case was remanded to this court for reconsideration in light of the decision in *Employment Div., Dep't of Human Resources of Oregon v. Smith*, 494 U.S. ——, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990) (*Smith II*). *Minnesota v. Hershberger*, 494 U.S. ——, 110 S.Ct. 1918, 109 L.Ed.2d 282 (1990). By order dated June 8, 1990, we required the parties to address two issues:

1. Whether *Employment Div., Dep't of Human Resources of Oregon v. Smith*, 494 U.S. ——, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990), is controlling upon this court's application of the free exercise clause of the first amendment of the United States Constitution in this case; and

2. Whether Minn.Stat. § 169.522 (1988) when applicable to these appellants violates rights protected by article I, section 16 of the Minnesota Constitution.

## I.

At the outset, we must address the state's request that this court reconsider our findings in *Hershberger I*, that the Amish appellants hold a sincere religious belief which forbids use of the SMV symbol, and that a less restrictive alternative to use of the symbol exists. While it is true that the United States Supreme Court's vacation of *Hershberger I* leaves that decision without force or effect, *Threlkeld v. Robbinsdale Fed'n of Teachers, Local 872, AFL–CIO*, 316 N.W.2d 551, 552 (Minn.), *appeal dismissed*, 459 U.S. 802, 103 S.Ct. 24, 74 L.Ed.2d 40 (1982), the record before us remains as it was when we found the Amish appellants to have demonstrated a personal sincere religious belief in conflict with the SMV statute and the state to have failed to demonstrate that use of silver reflective tape in conjunction with lighted red lanterns does not constitute a less restrictive alternative to the SMV symbol. *Hershberger I*, 444 N.W.2d at 287, 289.

Reconsideration of these issues would be proper if the Supreme Court had

based its remand on a perceived error in their determination. *See, e.g., Hill v. Western Elec. Co.* 672 F.2d 381, 387–89 (4th Cir.) (court may reinstate prior findings upon remand after vacation on appeal if error has not affected the merits of the determination sought to be reinstated), *cert. denied* 459 U.S. 981, 103 S.Ct. 318, 74 L.Ed.2d 294 (1982); 18 Wright, Miller & Cooper, *Federal Practice and Procedure*, § 4432, at 171 (1990 Supp.) ("Following vacation by an appellate court and remand, * * * it may at times be appropriate to cure the defect that led to the appellate decision *and to reinstate the original findings in the course of continued proceedings* in the same case." (emphasis added). The vacation and remand in this case goes to the application, as part of first amendment free exercise analysis, of the compelling state interest/least restrictive alternative test, and not to any perceived error in this court's findings in *Hershberger I.* Appellants have demonstrated a willingness to be incarcerated to avoid using a symbol whose color and meaning are antithetical to their faith, establishing that their religious belief in opposition to the SMV symbol is sincere. We note again the state failed to establish use of reflective tape with lighted red lanterns is not a less restrictive alternative protecting public safety.

## II.

While the practical application of *Smith II* remains to be seen, the Supreme Court appears to have significantly changed first amendment free exercise analysis. The *Smith II* court held a law of general application, which does not intend to regulate religious belief or conduct, is not invalid because the law incidentally infringes on religious practices. This holding apparently does away with the traditional compelling state interest test for laws burdening the exercise of religion standing alone. 494 U.S. at ——, 110 S.Ct. at 1599–1603. The *Smith II* court limited the compelling state interest test used by this court in *Hershberger I* to claims involving not the free exercise clause alone, but free exercise in conjunction with other constitutional pro-

tections. *Id.* at ——, 110 S.Ct. at 1601. These so called "hybrid" cases involve free exercise claims that touch on other constitutional protections ranging from parental rights, *e.g., Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972), to freedom of speech and press. *E.g., Murdock v. Pennsylvania*, 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292 (1943). Section 169.522 does not intend to regulate religious conduct or belief. Accordingly, under the first amendment free exercise clause as now interpreted by *Smith II*, whether the compelling state interest test is applicable apparently depends on whether requiring the Amish to comply with the SMV statute infringes on rights other than the free exercise of religion.

To establish a hybrid case under *Smith II*, appellants argue the compelled use of the SMV symbol touches on freedoms of assembly, speech, travel and particularly, freedom of association. The Amish community demonstrates the attributes of those associations traditionally deserving constitutional protection. The Amish community embodies "deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life." *Roberts v. United States Jaycees*, 468 U.S. 609, 620, 104 S.Ct. 3244, 3250, 82 L.Ed.2d 462 (1984). The United States Supreme Court has recognized that religious practices of the Amish "pervade[ ] and determine[ ] the entire mode of life of * * * adherents." *Yoder*, 406 U.S. at 210, 92 S.Ct. at 1530. Buggy and other slow moving vehicle transportation is an integral part of the Amish communal life and worship, so that a statute infringing on such transportation impairs associational freedoms.

While there might be merit in deciding the case and affirming *Hershberger I* based on associational freedoms also infringed by the statute, thereby distinguishing *Smith II*, we decline to do so. It is unnecessary to rest our decision on the uncertain meaning of *Smith II* when the Minnesota Constitution alone provides an

independent and adequate state constitutional basis on which to decide. *See, e.g., Michigan v. Long*, 463 U.S. 1032, 1040, 103 S.Ct. 3469, 3476, 77 L.Ed.2d 1201 (1983) (respect for independence of state courts avoids federal review of issues of state law); L. Tribe, *American Constitutional Law* § 3-24, at 165-66 (2d ed. 1988) (doctrine of independent and adequate state grounds prevents interference with state's interest in developing and applying its own law). We therefore decline to decide the applicability of *Smith II* to the facts before us.

### III.

■ We address now the issue we reserved for another day in *Hershberger I:* whether Minn.Stat. § 169.522, when applicable to these appellants, violates rights protected by article I, section 16 of the Minnesota Constitution. 444 N.W.2d at 284. Section 16 states:

> The enumeration of rights in this constitution shall not deny or impair others retained by and inherent in the people. *The right of every man to worship God according to the dictates of his own conscience shall never be infringed;* nor shall any man be compelled to attend, erect or support any place of worship, or to maintain any religious or ecclesiastical ministry, against his consent; *nor shall any control of or interference with the rights of conscience be permitted, or any preference be given by law to any religious establishment or mode of worship; but the liberty of conscience hereby secured shall not be so construed as to excuse acts of licentiousness or justify practices inconsistent with the peace or safety of the state*, nor shall any money be drawn from the treasury for the benefit of any religious societies or religious or theological seminaries.

Minn. Const. art. I, § 16 (emphasis added). This language is of a distinctively stronger character than the federal counterpart, which states only that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof * * *." U.S. Const. amend. I. Whereas the first amendment establishes a limit on government action at the point of *prohibiting* the exercise of religion, section 16 precludes even an *infringement* on or an *interference* with religious freedom. Accordingly, government actions that may not constitute an outright prohibition on religious practices (thus not violating the first amendment) could nonetheless infringe on or interfere with those practices, violating the Minnesota Constitution. Commentators have noted "the state Bill of Rights expressly grants affirmative rights in the area[ ] of * * * religious worship while the corresponding federal provision simply attempts to restrain governmental action." Fleming & Nordby, *The Minnesota Bill of Rights: "Wrapt in the Old Miasmal Mist"*, 7 Hamline L.Rev. 51, 67 (1984).

Section 16 also expressly limits the governmental interests that may outweigh religious liberty. Only the government's interest in peace or safety or against acts of licentiousness will excuse an imposition on religious freedom under the Minnesota Constitution. Conversely, the free exercise clause of the first amendment has been interpreted to allow varied government interests to justify such an imposition. *See, e.g., Bowen v. Roy*, 476 U.S. 693, 707, 106 S.Ct. 2147, 2156, 90 L.Ed.2d 735 (1986) (interest in avoiding case by case inquiries in administration of social security benefits outweighs religious freedom); *Goldman v. Weinberger*, 475 U.S. 503, 508, 106 S.Ct. 1310, 89 L.Ed.2d 478 (1986) (military's interest in uniformity and discipline outweighs individual's interest in wearing yarmulke). Because section 16 precludes an infringement on or an interference with religious freedom and limits the permissible countervailing interests of the government, Minnesotans are afforded greater protection for religious liberties against governmental action under the state constitution than under the first amendment of the federal constitution.

■ The state argues that by expressly including public safety as a restriction on exercise of religious freedoms, section 16 requires us to deny an exemption from the SMV statute for the Amish. The relevant provision of section 16 states:

[T]he liberty of conscience hereby secured shall not be so construed as to excuse acts of licentiousness or justify practices inconsistent with the peace or safety of the state, * * *.

Minn. Const. art. I, § 16. Rather than a blanket denial of a religious exemption whenever public safety is involved, only religious practices found to be *inconsistent* with public safety are denied an exemption. By juxtaposing individual rights of conscience with the interest of the state in public safety, this provision invites the court to balance competing values in a manner that the compelling state interest test we relied on in *Hershberger I* ably articulates: once a claimant has demonstrated a sincere religious belief intended to be protected by section 16, the state should be required to demonstrate that public safety cannot be achieved by proposed alternative means. *Hershberger I*, 444 N.W.2d at 288–89.

■ This analysis is similar to that applied to the claim for religious freedom based jointly on federal and state constitutional protection in *State v. Sports & Health Club*, 370 N.W.2d 844 (Minn.1985). While we did not expressly base our decision in *Sports & Health Club* on section 16 grounds, we held an exemption from the state Human Rights Act was not required, notwithstanding that sincere religious beliefs were burdened by the Act, because the state had a compelling interest in prohibiting discrimination and no less restrictive alternative existed. 370 N.W.2d at 853; *see also State v. French*, 460 N.W.2d 2 (Minn.1990) (plurality) (exemption based on religious grounds required under Minnesota Constitution unless state demonstrates compelling and overriding state interest in statutory purpose and in refusing to grant exemption). Thus, while the terms "compelling state interest" and "least restrictive alternative" are creatures of federal doctrine, concepts embodied therein can provide guidance as we seek to strike a balance under the Minnesota Constitution between freedom of conscience and the state's public safety interest.

Religious liberty is a precious right. The Preamble to the Constitution of the State of Minnesota states:

We, the people of the state of Minnesota, grateful to God for our civil *and religious liberty,* and desiring to perpetuate its blessings and secure the same to ourselves and our posterity, do ordain and establish this Constitution.

Minn. Const. preamble (emphasis added). The framers thus acknowledged religious liberty as coequal with civil liberty. The history of the adoption of the constitution indicates the importance of individual rights to the framers. *See* Fleming & Nordby, *supra,* at 70–71. This court has long recognized that individual liberties under the state constitution may deserve greater protection than those under the broadly worded federal constitution. *See, e.g., State v. Fuller*, 374 N.W.2d 722, 726 (Minn.1985) (double jeopardy clause); *Wegan v. Village of Lexington*, 309 N.W.2d 273, 281 n. 14 (Minn.1981) (equal protection); *O'Connor v. Johnson*, 287 N.W.2d 400, 405 (Minn.1979) (rights of criminally accused); *State v. Oman*, 261 Minn. 10, 21–22, 110 N.W.2d 514, 522–23 (1961) (due process); *Davis v. Pierse*, 7 Minn. 1, 6–7 (Gil. 1) (1862) (rights of criminally accused). Specifically as to individual religious freedom, a plurality of this court in *French* recognized that the early settlers of this region were of varied sects, may have endured religious intolerance in their native countries and were thus sensitive to religious differences among them. *French*, 460 N.W.2d at 9–10. This history supports a broad protection for religious freedom in Minnesota.

The interest in public safety is also fundamental, and serves as a rationale for the very formation of our state government. Article I, section 1 of the Minnesota Bill of Rights establishes, "Government is instituted for the security, benefit and protection of the people * * *." Minn. Const. art. I, § 1. Protection of public safety has long been understood to include control over the public highways, roads and streets of the state. *See State v. Edwards*, 287 Minn. 83, 86, 177 N.W.2d 40, 42–43 (1970).

Competing values of such significance require this court to look for an alternative that achieves both values articulated in section 16. Specifically, if freedom of conscience and public safety can be achieved through use of an alternative to a statutory requirement that burdens freedom of conscience, in this case the SMV symbol, section 16 requires an allowance for such an alternative. As we found in *Hershberger I*, the state has failed to demonstrate that use of reflective tape and a lighted red lantern proposed by the Amish is an insufficient warning to other drivers of a slow-moving buggy. 444 N.W.2d at 289. The reflective tape and lighted lantern provides an alternative that achieves both of the important values embodied in section 16: freedom of conscience and public safety.

The record in this case demonstrates an important attribute of the balancing test we adopt today for purposes of analyzing article I, section 16 of the Minnesota Constitution. The state's interest in public safety cannot be disputed. Merely because public safety is articulated as a competing interest in section 16, however, does not establish that interest as paramount. To infringe upon religious freedoms which this state has traditionally revered, the state must demonstrate that public safety cannot be achieved through reasonable alternative means. It may be that a claim for a religious exemption from public safety laws will seldom prevail over the state's strong interest in protecting the lives of its citizens. Today we hold only that the state has failed to provide a record which demonstrates that both values embodied in section 16, freedom of conscience and public safety, cannot be achieved through use of white reflective tape and a lighted red lantern.

The decision of the trial court denying the motion of these appellants to dismiss all pending charges is vacated, and those charges are hereby dismissed.

SIMONETT, Justice (concurring).

I join the court's opinion. Because this is the first occasion where our court has considered its liberty of conscience clause in any detail, aside from the plurality opinion in *State v. French*, 460 N.W.2d 2 (Minn. 1990), I should like to add an observation or two.

Article I, Section 16 of our constitution appears to have originated from quite similar clauses in the early constitutions of states along the eastern seaboard, such as New York's Constitution of 1777.[1] This is not surprising. The people here in 1857 were relatively few and mostly came from elsewhere.[2] Part of the Minnesota Territory was included in the Northwest Ordinance of 1787 which had been drafted by the Continental Congress, and which ordained that "[n]o person demeaning himself in a peaceable and orderly manner shall ever be molested on account of his mode of worship, or religious sentiments in the said territories."[3]

Section 16 reads in part:

The right of every man to worship God according to the dictates of his own con-

---

1. [T]he free exercise and enjoyment of religious profession and worship, without discrimination or preference, shall forever hereafter be allowed, within this State, to all mankind: *Provided,* That the liberty of conscience, hereby granted, shall not be so construed as to excuse acts of licentiousness, or justify practices inconsistent with the peace or safety of this State.
   N.Y. Const. of 1777, art. XXXVIII.

2. But in each State the people who make the constitution have lately come from other States, where they have lived under and worked constitutions which are to their eyes the natural and almost necessary model for their new State to follow; and in the absence of an inventive spirit among the citizens, it was the obvious course for the newer States to copy the organization of the older States, especially as these agreed with certain familiar features of the Federal Constitution.
   J. Bryce, *The American Commonwealth*, Vol. I, p. 403 (1891). In this book the author devotes considerable space to an examination of state constitutions.
   Writing in 1891, James Bryce, a visitor to the United States, observed, "There is not a country in the world where Frederick the Great's principle, that everyone should be allowed to go to heaven in his own way, is so fully applied." *Id.,* Vol. II, p. 680.

3. Northwest Ordinance of 1787, art. I.

science shall never be infringed * * * nor shall any control or interference with the rights of conscience be permitted * * *.

Arguably, Section 16 protects only expressions of belief and opinion and is no more than a free speech clause. There is no mention in the foregoing clause of religious practices or the free exercise of religion. Section 16 speaks, however, of the right "to worship God" according to the dictates of one's conscience; and the words "to worship," if read within their historical context, surely must mean the practice of one's religion. *See* M. McConnell, *The Origins and Historical Understanding of Free Exercise of Religion,* 103 Harv.L.Rev. 1409, 1459 (1990).[4] In other words, our state constitution protects a person's right to the free exercise of religion according to the dictates of his or her conscience, and that right is not to be infringed upon by the state.

After stating that no preference is to be given by law to any religious establishment or mode of worship, Section 16 goes on,

[B]ut the liberty of conscience hereby secured shall not be so construed as to excuse acts of licentiousness or justify practices inconsistent with the peace or safety of the state * * *.

This "peace or safety" provision also appears in various formulations in some of the older state constitutions,[5] even though the framers of the federal constitution did not use it. The provision is significant. It indicates clearly that a valid secular law which is neutral towards religion in its general application is, nevertheless, not necessarily exempt from the liberty of conscience clause. Thus, rather than a grant of individual freedom, I would read our liberty of conscience clause as an enumeration of a primordial right and a limitation on the power of the state; there was no need to grant affirmatively in the constitution what the people already understood that they had. *Accord State v. District Board of School Dist. No. 8,* 76 Wis. 177, 210–11, 44 N.W. 967, 978 (1890) (Cassoday, J., concurring).

As the court's opinion states, our "peace and safety" clause invites the traditional First Amendment balancing test to reconcile public safety on the highways with Amish religious practices. (Maj. op. at 397.) It seems to me, too, that Section 16's emphasis on "the dictates of [one's] own conscience" is consistent with a "sincerely held religious belief," as the United States Supreme Court has employed that phrase in construing the First Amendment; indeed, if anything, the Section 16 language is more emphatic.

There is much to be said in construing Section 16 in harmony with the nation's First Amendment whenever that is possible and appropriate.[6] Our decision today, it seems to me, says no more than that a secular law of general application is not exempt, as it is under the First Amendment when no other constitutional rights are involved, from examination under our liberty of conscience clause.

---

**4.** The fact that the "peace or safety" clause at the end of Section 16 refers to "practices" reinforces the interpretation of our liberty of conscience clause to apply to religious practices.

**5.** *See,* for example, footnote 1, *supra. See also* M. McConnell, *The Origins and Historical Understanding of Free Exercise of Religion,* 103 Harv.L.Rev. 1409, 1462 (1990). Interestingly, the "peace or safety" clause does not appear in the constitution of our sister state, Wisconsin.

**6.** Notwithstanding the dissimilarities of conditions in the various states, James Bryce noted various forces working towards uniformity, namely, the artificiality of state boundaries, the constant movement of the population, the influence of railroad communications, and the same political parties in each state. J. Bryce, *ibid.,* Vol. II, pp. 402–04. These factors, joined by others, have, in the past 100 years, continued even more strongly to shape the national character of Americans.