**In the Matter of the WELFARE OF T.K. and W.K., Children.**

No. C1–91–309.

Court of Appeals of Minnesota.

Sept. 10, 1991.

William H. Cowell, Miller & Cowell, Gaylord, for appellant parents.

David E. Schauer, Sibley County Atty., Winthrop, for respondent State.

Douglas G. Nelson, Nelson & Jones, Ltd., Henderson, for children.

Betty Grunzke, Gaylord, guardian ad litem.

Considered and decided by RANDALL, P.J., and HUSPENI, and SCHUMACHER, JJ.

## OPINION

HUSPENI, Judge.

Appellants, parents of T.K. and W.K., challenge the trial court's determination that the children were in need of protective services (CHIPS) and needed to be removed from the home pursuant to Minn.Stat. §§ 260.015 and 260.191 (1988). The CHIPS determination resulted from appellants' refusal to submit their children to standardized testing required under the home edu-

cation statute, Minn.Stat. § 120.101, subd. 8 (1988). We reverse and remand.

## FACTS

The proceedings giving rise to this appeal were initiated in late 1988 when Sibley County sought to declare T.K., the minor child of appellants, to be in need of protective services (CHIPS) within the meaning of Minn.Stat. § 260.015, subd. 2a(3) (1988).[1] The trial court so found, but allowed the physical custody of T.K. to remain with appellants subject to their establishing a home education program in compliance with Minn.Stat. § 120.101 (1988). Appellants did establish such a program, under which appellant mother taught T.K., and later a younger child, W.K., the subjects mandated by Minn.Stat. § 120.101, subd. 6. These subjects included:

(1) basic communication skills including reading and writing, literature, and fine arts;

(2) mathematics and science;

(3) social studies including history, geography, and government; and

(4) health and physical education.

*Id.* Mother used materials distributed by Rod and Staff Publishers, a religious publishing house.

Minn.Stat. § 120.101, subd. 8 required T.K. to take a nationally norm-referenced standardized achievement examination, and perform above the 30th percentile. She took one half of the Iowa Basic Skills Test, but appellants refused to allow her to take the remainder, stating that they wished to have the test administered in their home rather than at school. When the school agreed to conduct the test in appellants' home, appellants refused any testing, citing their religious beliefs. When W.K. reached seven years he, too, became subject to the testing requirements of the statute. When the parents refused testing for

---

1. Section 260.015, subd. 2a(3), provides:
    "Child in need of protection or services" means a child who is in need of protection or services because the child:
    \*      \*      \*      \*      \*      \*
    (3) is without necessary \* \* \* education \* \* \* because the child's parent, guardian, or custodian is unable or unwilling to provide that care.

him, the trial court found him to be a child in need of protective services.

In the order from which this appeal is taken, the trial court transferred custody of T.K. and W.K. to Sibley County Social Services, finding:

The parents sincerely believe that "sending their children to public school would expose them to eternal damnation for violating God's law."

[The parents] also sincerely believe that they can not "send their children to parochial school because organized religion interferes with the personal relationship between themselves as individuals and God and were therefore fearful that by participating in organized religion they might be worshiping a false God and therefore violate God's law."

[T]he parents sincerely believe that it would be against their religion to allow their children to take the standardized test mandated by [the statute].

[I]f the children were to take a nationally norm-referenced standardized achievement examination, they would perform above the 30th percentile.

The best interests of the children would be served by placing them in the physical custody of Sibley County Social Services, so that the state can be assured that they are receiving the minimal requisite education required by Minn.Stat. § [120.101].

The children's safety is not endangered by being at home, but their future education is in jeopardy.

The court, in effect, found Minn.Stat. § 120.101 to be constitutional, concluding that:

The state has a compelling interest in maintaining an educated populace, which furthers the peace and safety of the citizens of the state.

The state's interest outweighs the burden imposed on the parents' religious beliefs.

The compulsory education statute, by providing standardized testing for home-school children of parents who are not technically qualified to teach, is the least restrictive means of carrying out the state's interest.

The trial court stayed removal of T.K. and W.K. from appellants' home pending appeal.

## ISSUE

Does the trial court's removal of the children from the home for refusal to take a standardized norm-referenced examination as mandated by Minn.Stat. § 120.101, subd. 8, violate article I, section 16 of the Minnesota Constitution?

## ANALYSIS

Appellants and the guardian ad litem urge this court to declare that the statute requiring the children to take a standardized norm-referenced examination constitutes an impermissible infringement of their freedom of conscience guaranteed by article I, section 16 of the Minnesota Constitution.[2] Because the challenge to constitutionality is brought under the Minnesota Constitution, not the United States Constitution,[3] we begin our analysis, as did the trial court, by examining the decision of the Minnesota Supreme Court in *State v.*

2. Minn. Const. art. I, § 16 provides:

The right of every man to worship God according to the dictates of his own conscience shall never be infringed * * * nor shall any control of or interference with the rights of conscience be permitted * * *; but the liberty of conscience hereby secured shall not be so construed as to excuse acts of licentiousness or justify practices inconsistent with the peace or safety of the state.

3. Challenge by declaratory judgment to an Arkansas statute similar to the statute here was brought on United States Constitution grounds

and failed. In *Murphy v. State of Arkansas,* 852 F.2d 1039, 1041–43 (8th Cir.1988), the court held:

[T]he parties have stipulated that the testing requirements of the Arkansas law interfere with the Murphys' sincerely held religious beliefs. * * * [I]t is settled beyond dispute * * * that the state has a compelling interest in ensuring that all its citizens are being adequately educated. * * * In the end, we believe that the state has no means less restrictive than its administration of achievement tests to ensure that its citizens are being properly educated.

*Hershberger,* 462 N.W.2d 393 (Minn.1990) (*Hershberger II*).

In *Hershberger II,* in addition to noting that the Minnesota freedom of conscience guarantee is "distinctively stronger" than the freedom of religion granted under the federal constitution, the supreme court explained:

> Only the government's interest in peace or safety or against acts of licentiousness will excuse an imposition on religious freedom under the Minnesota Constitution.

*Id.* at 397.

When analyzing cases under the freedom of conscience provision, the supreme court framed the test to be applied as follows:

> [O]nce a claimant has demonstrated a sincere religious belief intended to be protected by section 16, the state should be required to demonstrate that [the state's interest] cannot be achieved by proposed alternative means.

*Id.* at 398 (citing *State v. Hershberger,* 444 N.W.2d 282, 288–89 (Minn.1989) (*Hershberger I*)).[4]

In *Hershberger II,* the supreme court ruled that the Amish defendant must be granted a reasonable accommodation in complying with the slow-moving vehicle statute.[5] *Id.* at 399. The *Hershberger II* court recognized that religious freedom is "coequal with civil liberty" under the Minnesota Constitution. *Id.* at 398. The court also determined that public safety was a fundamental right under the state constitution. *Id.* Ultimately, the court concluded that the state had not carried its burden of showing that no less restrictive alternative means of aiding public safety

existed, and dismissed the charges, holding that the alternative proffered by the Amish[6] adequately accommodated both the state's interest for insuring safety and the Amish's religious beliefs. *Id.* at 399.

Thus, our analysis of *Hershberger II* indicates that we must address three questions in an effort to determine whether Minn.Stat. § 120.101 violates the constitutional rights which appellants have under Minn. Const. art. I, § 16: First, do appellants have a sincerely held religious belief; second, does the state have a compelling interest in providing an education for its citizenry; and third, is the norm-referenced testing required by the state, in fact, the least restrictive means by which it can protect its compelling interest in education. We address each of these questions in turn.

### A. Sincerely Held Religious Belief

■ Respondent, through its notice of review, urges this court to reject the trial court's finding that appellants have a sincerely held religious belief that standardized testing violates their religion. This court will not disturb findings of fact based on testimonial and documentary evidence unless those findings are clearly erroneous. Minn.R.Civ.P. 52.01. We find no clear error.

■ The state urges that appellants' inconsistent position on testing[7] defeats their argument that they have a sincerely held religious belief. As the supreme court stated in *Hershberger I,* " '[R]eligious beliefs need not be acceptable, logical, *consistent,* or comprehensible to others in order to merit First Amendment protection.' " *Id.,* 444 N.W.2d at 286 (emphasis

---

4. After granting certiorari, the United States Supreme Court vacated and remanded *Hershberger I* for reconsideration in light of *Employment Div., Dep't of Human Resources of Oregon v. Smith,* 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990). *Minnesota v. Hershberger,* —— U.S. ——, 110 S.Ct. 1918, 109 L.Ed.2d 282 (1990).

5. The statute directed that all vehicles moving slower than 25 miles per hour were required to display "a fluorescent yellow-orange triangle with a dark red reflective border and be mounted so as to be visible from a distance of not less than 600 feet to the rear." Minn.Stat. § 169.-

522, subd. 1 (1988). The statute also allowed, as an alternative, for a black triangular sign and red reflective tape affixed to the rear of the vehicle. *Id.* Both alternatives offended the Amish religious prohibition against using worldly symbols and displaying loud colors. *Hershberger I,* 444 N.W.2d at 284.

6. The Amish agreed to utilize white reflective tape and a red lantern to warn other drivers.

7. Appellants first agreed to allow testing in their home; T.K. completed a portion of the examination before appellants refused all testing.

added) (quoting *Thomas v. Review Bd. of Indiana Employment Sec. Div.*, 450 U.S. 707, 714, 101 S.Ct. 1425, 1430, 67 L.Ed.2d 624 (1981)). The Minnesota Constitution affords an even higher degree of protection than does the first amendment of the United States Constitution. Therefore, consistency is not required here.

At the October 25, 1990 hearing, father explained his reasons for not allowing the children to take the standardized test. That explanation gives ample support to the trial court's determination that "the parents sincerely believe that it would be against their religion to allow their children to take the standardized test mandated by [the statute]." Further, father has shown a willingness to go to jail in order to protect his religious beliefs. Finally, the sincerity of the parents' religious belief is illustrated by the removal of three older children from the parents' home due to the parents' refusal to permit those children to attend public school. Since removal, the parents have consistently refused all contact with those children. While we deplore the emotional consequences to both parent and child of such refusal, we believe it supports the parents' insistence that their religious beliefs are sincere; they have incurred a tremendous price for them.

After a careful review of this record, we cannot find clear error in the trial court's determination that appellants' religious belief is sincerely held.

### B. State's Interest

■ The parties do not dispute that the state has a compelling interest in educating its citizenry. We also recognize that interest. The language of the state constitution demonstrates the value that Minnesotans place on education:

> The stability of a republican form of government depending mainly upon the intelligence of the people, it is the duty of the legislature to establish a general and uniform system of public schools. Minn. Const. art. XIII, § 1. In order to implement the constitutional mandate, the legislature enacted the compulsory attendance statute.[8] This statute attempts to ensure that each child in Minnesota receives an education.

### C. Least Restrictive Alternative

■ Under the test enunciated in *Hershberger II*, we have determined both that appellants hold a sincere religious belief which is protected by Minn. Const. art. I, § 16, and that the state has a compelling interest in educating its citizenry. We now must consider whether the state has borne its burden of proving that no less restrictive means exist to promote its compelling interest in an educated citizenry.

Recognizing that for religious and other reasons not all parents wish their children to attend public or private schools, the legislature provided for the home education of children. Minn.Stat. § 120.101, subd. 4. The legislature, naturally, wished to ensure that the instruction met minimum standards. Accordingly, it dictated that certain basic subjects must be taught. *See id.*, subd. 6. Further, in cases in which the home school teacher did not hold a teaching certificate or have a bachelor's degree, the children would be required to undergo a yearly standardized norm-referenced examination to assess progress. *Id.*, subd. 8(a). If the children took the examination and received a battery score "at or below the 30th percentile or one grade level below the performance level for children of the same age," the statute mandates "additional evaluation of the child's abilities and performance for the purpose of determining whether the child has learning problems." *Id.*, subd. 8(c).

We conclude that the purpose of the testing requirement for those students who are taught at home by non-accredited parents

---

**8.** "In accordance with the responsibility vested in the legislature in the Minnesota Constitution, article XIII, section 1, the legislature declares that the purpose of public education in Minnesota is to help all individuals acquire knowledge, skills, and positive attitudes toward self and others that will enable them to solve problems, think creatively, continue learning, and develop maximum potential for leading productive, fulfilling lives in a complex and changing society." Minn.Stat. § 120.011 (1988).

is to reliably evaluate the progress of home school students and to compare this progress to their peers in the public and private schools. Thus, the final question which we must answer under the *Hershberger II* analysis is whether the testing requirement presents the least restrictive alternative in balancing appellants' constitutional rights with the state's compelling interest in educating its citizens. We conclude that we are unable to make that determination on the record before us.

When appellants refused testing, respondent sought and obtained a court order which found that removing the children from the parental home was the least restrictive alternative available. Notwithstanding a lengthy and thoughtful memorandum from the trial court, we conclude that this determination was, at the very least, premature. Had T.K. and W.K. *taken* the standardized test and scored below the 30th percentile, respondent would have been required to invoke the additional procedures set forth in Minn.Stat. § 120.103 (1988). Those additional procedures provide, first, that the superintendent may make site inspections to determine whether the home school complies with state requirements. Minn.Stat. § 120.103, subd. 1. If the "school" is not in compliance, the superintendent must give notice to the parents, listing specific violations. *Id.*, subd. 3. Next, if the violations go uncorrected, the parties must engage in fact finding and mediation. *Id.*, subd. 4. Finally, if all else fails, the superintendent may contact the county attorney who thus may bring misdemeanor charges against the parents. *Id.*, subds. 5–6.

■ When appellants refused to permit the children to be tested, the trial court did not attempt to exhaust these additional statutory remedies in order to determine whether appellants were providing an adequate home school education for their children. Rather than issue a sanction related to the "violated" statute, Minn.Stat. § 120.-101, the trial court here removed appellants' children from the home as children in need of protective services pursuant to Minn.Stat. § 260.015. While Minn.Stat. § 120.103 mandates additional remedies in the context of a child taking the test and failing to score at the 30th percentile level, we can discern no rationale under which respondent should invoke harsher sanctions for failure to take the test than it would invoke for taking and failing it.[9]

The trial court has documented the time, thought and concern it has expended on this matter. Nonetheless, we are convinced that only upon demonstration by respondent of compliance with all the requirements of Minn.Stat. § 120.101 will the trial court be able to determine whether, in fact, the statute does meet the "least restrictive means" test as set forth in *Hershberger II.*

■ We have an additional concern. Inasmuch as this proceeding involves two statutory provisions, the trial court, on remand, should assure that requirements of each provision have been met. If, upon exhaustion of the section 120.101 provisions, respondent demonstrates appellants' continued noncompliance, the trial court must then determine if this statute does, in fact, represent the least restrictive alternative available to the state to assure its compelling interest in citizen education, and if this statute is, therefore, constitutional. If the trial court finds section 120.101 to be constitutional, it must next determine whether violation of this statute is tantamount to the severe deprivation of education we believe is necessary to warrant a CHIPS determination and removal under Minn.Stat. §§ 260.015 and 260.191. *See In re Welfare of Wachlin*, 309 Minn. 370, 245 N.W.2d 183, 185 (1976) (court determined child to be neglected due to parent's failure to provide proper care and education for the child).

A final observation: we urge all parties to continue to explore in good faith all reasonable means to assure that T.K. and W.K. receive an education of the quality

---

9. In view of the trial court's own finding that "if the children were to take a nationally norm-referenced standardized achievement examina- tion, they would perform above the 30th percentile," the sanction imposed by the trial court appears even harsher.

**94**

which the state interest compels while they also remain in the parental home. The consequences of failure to do so are unacceptable. These children should not be put in a position where they can only receive an acceptable education outside their parental home or, alternatively, only remain at home by sacrificing the opportunity to receive an education. They deserve both an education and a nurturing, loving parental home.

### DECISION

The trial court erred by removing the children from the home before first exhausting the remedies available under the compulsory education statute.

Reversed and remanded.

SCHUMACHER, Judge, concurring specially.

I concur in the result only.