*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1275**

In the Matter of the Welfare of the Children of:
D. M. J., D. A. H. and J. J. W., Parents

**Filed December 14, 2015
Affirmed
Smith, Judge**

Swift County District Court
File No. 76-JV-15-148

Matthew P. Franzese, Wheaton, Minnesota (for appellant D.M.J.)

D.A.H., Hancock, Minnesota (pro se respondent)

J.J.W., Benson, Minnesota (pro se respondent)

Danielle H. Olson, Swift County Attorney, Matthew B. Novak, Assistant County Attorney, Benson, Minnesota (for respondent Swift County Human Services)

Susan Marsolek, Ortonville, Minnesota (guardian ad litem)

Considered and decided by Bjorkman, Presiding Judge; Smith, Judge; and Klaphake, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**UNPUBLISHED OPINION**

**SMITH**, Judge

We affirm the district court's adjudications of E.A.H. and D.J.W. as children in need of protection or services (CHIPS) because the record is sufficient to support the district court's finding of educational neglect.

**FACTS**

At some point before the 2014-2015 school year, appellant-mother D.M.J. transferred E.A.H. and D.J.W.[1] from the Benson school system to Glacial Hills Elementary School in Starbuck, approximately 20 miles away. Because they lived outside of the regular bus route for Glacial Hills Elementary School, D.M.J. drove the children to and from school. During the 2014-2015 school year, E.A.H. was absent from school 32.5 days and tardy an additional 38 days and D.J.W. was absent from school 30.5 days and tardy an additional 32 days. This amounted to approximately one-third to one-half of the school year.

In late November 2014, respondent Swift County Human Services (SCHS) received truancy-prevention referrals from Glacial Hills Elementary School. After unsuccessfully attempting to work with the family, SCHS filed a CHIPS petition on behalf of E.A.H. and D.J.W., alleging educational neglect under Minn. Stat. § 260C.007, subd. 6(3) (2014).

---

[1] At the time of the CHIPS adjudications, E.A.H. was 12 years old and D.J.W. was 9 years old.

At trial, D.M.J. "admitted that the children missed a considerable amount of school during the 2014-2015 school year," but stated that the attendance problems were caused by car troubles and illnesses. D.M.J. also stated that she was unable to call Glacial Hills Elementary School to excuse the children because she did not have a phone. D.M.J. was concerned about her children's attendance and the possibility that they might fall behind in school work but "expressed frustration" with the county for failing to help her repair her vehicle. D.M.J. explained that she wanted financial assistance, not services, and did not want to interact with SCHS.

During the 2014-2015 school year, D.J.W. continued to receive As and Bs and to attend speech therapy several days per week. But E.A.H.'s grades slipped from As and Bs to Cs and Ds. Glacial Hills Elementary School Principal Deb Mathias explained that school attendance was "particularly important" for E.A.H. because he had an individualized education program (IEP) and often attended special classes. According to Principal Mathias, E.A.H. "had come out of his shell during the 2013-2014 school year, but reverted back to a closed-up and introverted student as the consistency of his school attendance decreased." E.A.H. was often unable to participate in the social-skills track of his IEP because it took place before classes began in the morning, and his absences and tardiness precluded his participation in his IEP.

D.M.J. argued to the district court that SCHS could not show she was educationally neglectful because both children passed their respective grades and the absences did not affect their school work. The district court disagreed and adjudicated E.A.H. and D.J.W. as CHIPS.

**DECISION**

To adjudicate a child as CHIPS, a district court must conclude that at least one statutory basis in Minn. Stat. § 260C.007, subd. 6 (2014) exists and that the child "needs protection or services as a result." *In re Welfare of Child of S.S.W.*, 767 N.W.2d 723, 732 (Minn. App. 2009). "Findings in a CHIPS proceeding will not be reversed unless clearly erroneous," meaning that the reviewing court is left "with the definite and firm conviction that a mistake has been made." *In re Welfare of B.A.B.*, 572 N.W.2d 776, 778 (Minn. App. 1998) (quotation omitted). We "closely inquire into the sufficiency of the evidence to determine whether the evidence is clear and convincing." *Id.* (quotation omitted). "Considerable deference is due to the district court's decision because a district court is in a superior position to assess the credibility of witnesses." *In re Welfare of L.A.F.*, 554 N.W.2d 393, 396 (Minn. 1996).

A district court may adjudicate a child as CHIPS when it finds that the child is being deprived of an education "because the child's parent . . . is unable or unwilling to provide [it]." Minn. Stat. § 260C.007, subd. 6(3). Unlike habitual truancy, which focuses on the behavior of the child, "educational neglect focuses on the behavior of the parent." *B.A.B.*, 572 N.W.2d at 779. In *B.A.B.*, we affirmed a CHIPS adjudication for educational neglect when the child was absent at least 20 days and tardy at least nine days. *Id.* at 777 (explaining that the attendance system did not record all of the child's absences). We stated that "the parent's persistent failure to ensure [the child's] regular attendance at school warranted the CHIPS adjudication," even though the child was

4

sometimes absent due to illness and the parent was not "indifferent" regarding the child's welfare. *Id.* at 779.

D.M.J. acknowledges our holding in *B.A.B.* but asks us to adopt a new standard for educational-neglect cases that requires both "a large number of absent/tardy days" and actual harm to the child's education and academic performance. While we require a "severe deprivation of education . . . to warrant a CHIPS determination and removal" from the home, *In re Welfare of T.K.*, 475 N.W.2d 88, 93 (Minn. App. 1991), we rejected applying the severe-deprivation standard "when the disposition does not involve the drastic step of removing the child from the home," *B.A.B.*, 572 N.W.2d at 779.

Because we have previously rejected a similar argument that a CHIPS adjudication for educational neglect requires proof of harm to the child's education, we decline to adopt D.M.J.'s proposed standard. *See B.A.B.*, 572 N.W.2d at 779; *Tereault v. Palmer*, 413 N.W.2d 283, 286 (Minn. App. 1987) ("[T]he task of extending existing law falls to the supreme court or the legislature, but it does not fall to this court."), *review denied* (Minn. Dec. 18, 1987). We also note that D.M.J.'s proposed standard improperly places the focus of a CHIPS petition for educational neglect on the child's behavior rather than the parent's. *See B.A.B.*, 572 N.W.2d at 779.

Under our existing caselaw, we conclude that the district court's finding of educational neglect was not clearly erroneous. "A child's absence from school is presumed to be due to the parent's . . . failure to comply with compulsory instruction laws if the child is under 12 years old and the school has made appropriate efforts to resolve the child's attendance problems . . . ." Minn. Stat. § 260C.163, subd. 11(a)

5

(2014).[2] E.A.H. and D.J.W. were each absent over 30 days and tardy over an additional 30 days. Even though some of the absences were due to illness and D.M.J. admitted she was concerned about the absences, D.M.J. was unable to ensure the children's regular attendance at school. *See B.A.B.*, 572 N.W.2d at 779. School attendance is critical to both children because they receive special services, but is especially critical to E.A.H. due to his IEP. *See id.* As in *B.A.B.*, D.M.J.'s "persistent failure to ensure [the children's] regular attendance at school warranted the CHIPS adjudication[s]." *See id.* Therefore, the district court's findings were not clearly erroneous.

**Affirmed.**

---

[2] It appears that E.A.H. turned 12 during the 2014-2015 school year. But neither party suggests that the absences after E.A.H.'s 12th birthday should therefore be attributed to him. *See* Minn. Stat. § 260C.163, subd. 11(a) (stating that, when a child is 12 years old or older, any unexcused absences are "presumed to be due to the child's intent to be absent from school").

6